# STATE OF NORTH CAROLINA

_____CUMBERLAND_____ County

File No. 18 CVS 4031

In The General Court Of Justice
☐ District ☒ Superior Court Division

| Name Of Plaintiff | |
|---|---|
| CITY OF FAYETTEVILLE | **CIVIL SUMMONS** |
| Address | ☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |
| City, State, Zip | |
| **VERSUS** | G.S. 1A-1, Rules 3 and 4 |
| Name Of Defendant(s) | Date Original Summons Issued |
| SECURITY NATIONAL INSURANCE COMPANY | Date(s) Subsequent Summons(es) Issued |

### To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| Security National Insurance Company<br>c/o Corporation Service Company<br>251 Little Falls Drive<br>Wilmington, Delaware 19808 | |

⚠️ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out!**
**You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!**
**Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

### A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date Issued 10-1-18 | Time 1:35 ☐ AM ☒ PM |
|---|---|---|
| Keith H. Johnson<br>Poyner Spruill LLP<br>P.O. Box 1801<br>Raleigh, North Carolina 27602 | Signature | |
| | ☒ Deputy CSC ☐ Assistant CSC | ☐ Clerk Of Superior Court |

| ☐ ENDORSEMENT (ASSESS FEE)<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Date Of Endorsement | Time ☐ AM ☐ PM |
|---|---|---|
| | Signature | |
| | ☐ Deputy CSC ☐ Assistant CSC | ☐ Clerk Of Superior Court |

**NOTE TO PARTIES:** _Many counties have_ **MANDATORY ARBITRATION** _programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed._

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

NORTH CAROLINA

CUMBERLAND COUNTY

GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18-CVS-_4031

CITY OF FAYETTEVILLE,

Plaintiff,

v.

SECURITY NATIONAL INSURANCE
COMPANY,

Defendant.

COMPLAINT



NOW COMES Plaintiff City of Fayetteville ("City"), who, in complaining of Defendant

Security National Insurance Company ("Defendant"), alleges as follows:

## PARTIES

1.      The City is a municipal corporation existing under the laws of North Carolina,

located in Cumberland County, North Carolina.

2.      Upon information and belief, Defendant is an insurance company that was

authorized to sell insurance products in North Carolina during the time of the events

referenced below which give rise to this action.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action and all parties

hereto pursuant to, *inter alia*, N.C. Gen. Stat. § 1-75.1, *et seq.* and N.C. Gen. Stat. § 7A-243.

4.      Venue is proper in Cumberland County Superior Court pursuant to N.C. Gen.

Stat. § 1-82.

## FACTUAL ALLEGATIONS

5.      Defendant, an affiliate or division of AmTrust North America, issued a commercial

general liability policy to Michael M. Walker, d/b/a Impera Contracting ("Policy"), the effective

period from September 3, 2015, through September 3, 2016. A copy of the Policy is attached as

Exhibit A and is incorporated herein by reference. Under the terms of the Policy, Defendant agreed to pay sums to which Impera "becomes legally obligated to pay [to third-parties] as damages because of 'bodily injury' or 'property damage' to which" the Policy applies, up to the Policy's limits. *See* Policy Form CG 00 01 12 07, Section I.

6.     On or about August 19, 2015, the City issued a request for proposals ("RFP") for the "Sediment Basin Project at Branson Creek" ("Project"). The Project involved the removal of accumulated sediment in and along a certain stretch of Branson creek, located in the City limits, for stormwater/flood control purposes.

7.     Based on the nature of the Project, it was clear and known to all contractors who responded to the RFP that the Project area was a low-lying area with a high moisture content within an active waterway.

8.     On or about September 30, 2015, the City accepted the offer of Impera to complete the Project, for the sum of $21,574.40. The City and Impera entered into a written agreement setting out the scope of work for the Project and providing other general contract provisions.

9.     Among these general contract provisions, the agreement specifically provided that Impera "shall be responsible for any damages to the [City's] property or that of others on the job, by them, their personnel, or their subcontractors, and shall make good such damages." The agreement also provided that Impera "assumes entire responsibility and liability for losses, expenses, demand and claims in connection with or arising out of any injury . . . to any person, or damage . . . to the City of Fayetteville or others sustained or alleged to have been sustained in connection with or to have arisen out of or resulting from the negligence of" Impera.

2

10.     The agreement also required that Impera maintain commercial general liability insurance with limits of $1,000,000 per occurrence and $2,000,000 in the aggregate.

11.     Completing the work for the Project did not require that any heavy equipment be operated in the creek bed. High ground existed along the creek bank, above the creek bed, in the Project work area. With the right size of trackhoe, it was possible and indeed anticipated that Impera's equipment operators would operate the trackhoe from that creek bank, using the arm of the trackhoe to remove sediment from the creek bed below.

12.     Impera, however, used at least one under-sized trackhoe for the Project, whose arm had insufficient reach to do so.

13.     On or about October 24, 2016, during the Policy period, one of Impera's trackhoe operators drove the trackhoe off the adjacent creek bank, the high ground, into the creek bed. The trackhoe got stuck while working in the creek bed.

14.     The appropriate response would have been to bring in a tow vehicle or other equipment capable of pulling the trackhoe back to high ground using cable(s).

15.     Rather than doing so, and to avoid the associated costs, Impera's employees attempted several self-help measures that only made matters significantly worse. Impera's employees first attempted to use the trackhoe to dig itself out. This caused a hole to form around the trackhoe, making it sink further in mud.

16.     Impera then rented a second, smaller excavator in an effort to dig the stuck trackhoe out of the sediment. This effort was futile, and only made the trackhoe sink further. Moreover, in doing so, Impera dug into the creek bank with the second machine, destabilizing the creek bank and endangering a buried sewer line. Attached under Exhibit B and incorporated herein by reference is a picture of the trackhoe five days after it was driven off the creek bank and got stuck.

3

17.     Upon learning of the circumstances at that point and conducting an inspection, City staff issued an immediate stop work order to Impera, and took over recovery efforts. Attached under Exhibit C and incorporated herein by reference is a picture taken on October 30, 2016, showing City contractors applying temporary groundcover material over the adjacent creek bank. The trackhoe is shown in the picture just off the creek bank, stuck in the creek bed.

18.     The City ultimately incurred expenses totaling $125,773.24 in that effort. This included costs to temporarily bypass the sewer line, and to properly excavate the trackhoe.

19.     After incurring these costs, the City demanded payment from Impera, and notified Defendant of the losses and expenses incurred. Impera and Defendant were notified if no payment was received, the City would file a civil action against Impera to recover its damages caused by Impera's negligence.

20.     In a letter dated February 27, 2017, Defendant denied any coverage under the Policy existed for the City's losses on the grounds that: (a) there was no negligence on the part of Impera; (b) Impera was not "legally obligated" to pay any sums to the City; and, (c) the trackhoe did not become lodged in the sediment due to operator negligence, but was in fact the result of "the formation of an instantaneous sinkhole in the basin," and would be excluded from coverage under the Policy in any event.

21.     In May 2017, having received no compensation for its losses, the City filed a civil action against Impera and its trackhoe operator. *See City of Fayetteville v. Impera Contracting, Inc. and Christopher Lane*, Cumberland County 17 CVS 3615 ("Impera Lawsuit"). A copy of the Complaint in the Impera Lawsuit is attached as Exhibit D.

22.     In the Impera Lawsuit, the City alleged, in part, that Impera's trackhoe operator was negligent in operating the trackhoe, that Impera failed to mitigate the damages

caused by its equipment operator's initial negligent act, that Impera negligently supervised its employees in connection with the Project, and that this negligence proximately caused the City's damages. *See* Ex. D ¶¶ 32-46.

23.    Defendant had advance notice of the City's claim and, under the terms of the Policy, had a duty to defend Impera in the Impera Lawsuit. Notwithstanding this notice, Defendant did not provide a defense to Impera in that civil action.

24.    The Impera Lawsuit was the proper civil action for asserting any defense to the City's claims that its losses were caused by the negligence of Impera, including the false assertion that the situation was caused by the alleged "spontaneous formation of a sinkhole," or other natural conditions.

25.    On October 2, 2017, the Cumberland County Superior Court entered a default judgment in the Impera Lawsuit against Impera and its trackhoe operator, in the amount of $125,773.24. A copy of that default judgment is attached as Exhibit E.

26.    As a result of entry of that default judgment, the substantive allegations in the City's Complaint in the Impera Lawsuit—including that Impera's negligence caused the City's losses, and the amount of the City's losses—are no longer at issue. *See Blankenship v. Town & Country Ford, Inc.,* 174 N.C. App. 764, 767, 622 S.E.2d 638, 640 (2005).

27.    On April 17, 2018, the City sent a letter to Defendant notifying Defendant of the impact of the default judgment on the issues of causation and amount of the City's damages, and again demanding that Defendant reimburse the City for its losses under the Policy. A copy of the City's April 17 letter is attached as Exhibit E.

28.    To date, Defendant has failed to respond to, or even acknowledge, the City's demand in that letter.

## CLAIM FOR RELIEF

29. The City re-alleges and incorporates by reference all preceding paragraphs.

30. The Policy was a binding contract between Defendant and Impera, and the City was an intended third-party beneficiary of that insurance contract.

31. The amount of the City's damages, $125,773.24, which Impera is legally obligated to pay, is below the applicable Policy limit of $1,000,000.

32. Defendant has a duty, under the terms of the Policy, to reimburse the City for its damages for which Impera is legally obligated to pay, pursuant to the default judgment the City obtained against Impera.

33. Defendant has breached that duty by, upon demand, failing to reimburse the City for those damages.

## DEMAND FOR JURY TRIAL

The City demands a trial by jury on all issues so triable.

The City requests that the Court enter a judgment in its favor against Defendant, granting the City following relief:

(a)  an award of its damages, in an amount not less than $125,773.24;

(b)  the costs of bringing this action be taxed to Defendant, as allowed by law;

(f)  pre-judgment interest, as allowed by law; and

(g)  any other relief which the Court deems just and proper.

6

This the ___ day of May, 2018.

POYNER SPRUILL LLP

By: _____
Keith H. Johnson
N.C. State Bar No. 17885
kjohnson@poynerspruill.com
Colin R. McGrath
N.C. State Bar No. 47936
cmcgrath@poynerspruill.com
P.O. Box 1801
Raleigh, NC 27602-1801
Telephone: (919) 783-2895
Facsimile: (919) 783-1075

FAYETTEVILLE CITY
ATTORNEYS OFFICE

By: _____
Alicia L. Young
N.C. State Bar No. 23483
AYoung@ci.fay.nc.us
433 Hay Street
Fayetteville, NC 28301-5537
Telephone: (910) 433-1985

*Attorneys for Plaintiff*
*City of Fayetteville*

# SECURITY NATIONAL INSURANCE CO

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | INSURED | PRODUCER AND CODE |
|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | | |
| | | | | A.M. | MICHAEL M WALKER | OL025 |
| A113405400 | 11 | 04 | 15 | X | DBA: IMPERA CONTRACTING | BUILDERS & TRADESMEN'S INS SVC |

| | |
|---|---|
| Additional Amounts : | |
| Premium $ | 85.00 |
| Total $ | 85.00 |

PER REQUEST, AMENDED PAYROLL FOR CLASS CODE 91560 TO REFLECT $20,500 IN LIEU OF $40,800

ADDED CLASS CODE 94007 WITH $10,200 IN PAYROLL

ADDED CLASS CODE 98820 WITH $5,100 IN PAYROLL

ADDED CLASS CODE 99946 WITH $5,100 IN PAYROLL

P/R _.830_

DE FAYETTEVILLE INS & FIN'L - OL025

'E   11-13-15
   MJD

_Authorized Representative_

- INSURED -                                    RSHUCK

# COMMERCIAL GENERAL LIABILITY COVERAGE PART
## DECLARATIONS

Policy No. NA113405400

Effective Date: 09-03-2015
12:01 A.M. Standard Time

### LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate Limit (Other Than Products - Completed Operations) | $ 2,000,000 |
| Products – Completed Operations Aggregate Limit | $ 2,000,000 |
| Personal and Advertising Injury Limit | $ 1,000,000 |
| Each Occurrence Limit | $ 1,000,000 |
| Damage to Premises Rented to You (Fire Damage) Limit | $ 100,000 Any One Premises |
| Medical Expense Limit | $ 5,000 Any One Person |

### LOCATION OF PREMISES

Location of All Premises You Own, Rent or Occupy:
12 EAST KILLIEGREY ST, LILLINGTON, NC 27546

### PREMIUM

| Classification | Code No. | Premium Basis | Rate Pr/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|
| CONCRETE CONSTRUCTION | 91560 | 20,500 (p) | INCL | 13.851 | INCL | 284 |
| FAULTY WORKMANSHIP | 73444 | (c) | INCL | | INCL | 30 |
| EXCAVATION | 94007 | 10,200 (c) | INCL | 22.179 | INCL | 226 |
| SEWER MAINS OR CONNECTIONS CONSTRUCTION | 98820 | 5,100 (p) | INCL | 16.522 | INCL | 84 |
| WATER MAINS OR CONNECTIONS CONSTRUCTION | 99946 | 5,100 (p) | INCL | 14.110 | INCL | 72 |

Total Advance Premium 696

| | | |
|---|---|---|
| (a) area – per 1000 sq. ft. | (m) admissions – per 1000 | (e) each (u) units |
| (s) gross sales – per $1000 | (p) payroll – per $1000 | (c) total cost – per $1000 |

### FORMS AND ENDORSEMENTS (other than applicable Forms and Endorsements shown elsewhere in the policy)

Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:

See Schedule of Applicable Forms

*Information Omitted if shown elsewhere in the policy
THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS THE NAME OF THE INSURED AND THE POLICY PERIOD.
This page alone does not provide coverage and must be attached to a Commercial Lines Common Policy Declarations Page.
Common Policy Conditions, Coverage Part Coverage Form(s) and any other applicable forms and endorsements.

--- --- ---

## SECURITY NATIONAL INSURANCE CO

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | INSURED | PRODUCER AND CODE |
|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 A.M. | | |
| A113405400 | 09 | 03 | 15 | X | MICHAEL M WALKER<br>DBA: IMPERA CONTRACTING | OL025<br>BUILDERS &<br>TRADESMEN'S INS<br>SVC |

Additional Amounts :

Premium $     141.00

Total $     141.00

PER REQUEST, REMOVED FORMS CG2134NR (01/87) EXCLUSION - DESIGNATED WORK AND CG2153NR (01/96) EXCLUSION DESIGNATED ONGOING OPERATIONS

P/R 1.000

·DE FAYETTEVILLE INS & FIN'L - OL025

:E   11-13-15
    MJD

_____
Authorized Representative

- INSURED -

RSHUCK

# COMMERCIAL GENERAL LIABILITY COVERAGE PART
## DECLARATIONS

Policy No.  NA113405400

### LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products  - Completed Operations) | $ 2,000,000 | |
| Products – Completed Operations Aggregate Limit | $ 2,000,000 | |
| Personal and Advertising Injury Limit | $ 1,000,000 | |
| Each Occurrence Limit | $ 1,000,000 | |
| Damage to Premises Rented to You (Fire Damage) Limit | $ 100,000 | Any One Premises |
| Medical Expense Limit | $ 5,000 | Any One Person |

### LOCATION OF PREMISES

Location of All Premises You Own, Rent or Occupy:
12 EAST KILLIEGREY ST, LILLINGTON, NC 27546

### PREMIUM

| Classification | Code No. | Premium Basis | Rate Pr/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|
| CONCRETE  CONSTRUCTION | 91560 | 40,800  (p) | INCL | 13.851 | INCL | 565 |
| FAULTY  WORKMANSHIP | 73444 | (c) | INCL | | INCL | 30 |

| | | |
|---|---|---|
| | Total Advance Premium | 595 |

| | | |
|---|---|---|
| (a)  area – per 1000 sq. ft. | (m) admissions – per 1000 | (e)  each                                   (u) units |
| (s)  gross sales – per $1000 | (p)  payroll – per $1000 | (c)  total cost – per $1000 |

### FORMS AND ENDORSMENTS  (other than applicable Forms and Endorsements shown elsewhere in the policy)

Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:

See Schedule of Applicable Forms

*Information Omitted if shown elsewhere in the policy
THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS THE NAME OF THE INSURED AND THE POLICY PERIOD.
This page alone does not provide coverage and must be attached to a Commercial Lines Common Policy Declarations Page,
Common Policy Conditions, Coverage Part Coverage Form(s) and any other applicable forms and endorsements.

# COMMERCIAL LINES POLICY
## COMMON POLICY DECLARATIONS
Security National Insurance Company
800 Superior Avenue East, 21st floor
Cleveland, OH 44114

__NEW__

Renewal of Number
Named Insured and Mailing Address                                    **Policy No.  NA113405400**
(No., Street, Town or City, County, State, Zip Code)

    MICHAEL N WALKER
    DBA: IMPERA CONTRACTING
    12 EAST KILLIEGREY ST
    LILLINGTON, NC 27546

Producer and Mailing Address
(No., Street, Town or City, County, State, Zip Code)
    BUILDERS & TRADESMEN'S INS SVC
    6610 SIERRA COLLEGE BLVD
    ROCKLIN, CA 95677                                                Tax State  NC
    TEL: (877) 649-6682

Policy Period:        From  09-03-2015  to    09-03-2016       at 12:01 A.M. Standard Time
                      at your mailing address shown above.

Form of Business:  Individual

Business Description:  CONCRETE CONSTRUCTION

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE
THE INSURANCE STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

|                                                    | PREMIUM |
|----------------------------------------------------|---------|
| Commercial Property Coverage Part                  | $ Not Covered |
| Commercial General Liability Coverage Part         | $ 454.00 |
|                                                    | $ |
|                                                    | $ |
|                                                    | $ |
| Policy Fee: $150.00                                | $ 150.00 |
|                                           TOTAL    | $ 604.00 |

CERTIFIED
THIS IS A TRUE AND CORRECT
COPY OF THE ORIGINAL POLICY

DATE: 2/13/17

SIGNATURE: _____

Form(s) and Endorsement(s) made a part of this policy at time of issue *:

See Schedule of Applicable Forms

\* Omits applicable Forms and Endorsements if shown in specific Coverage Part/Coverage Form Declarations.

Countersigned:    09-10-15    MJD            By _____
                                                      Authorized Representative

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE FORM(S)
AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.
Includes copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, Inc., 1983, 1984

49 -0120 07 11                               – INSURED –

# COMMERCIAL LINES POLICY



## UBI

A Division of AmTrust North America

214-360-8000

**12790 MERIT DRIVE
DALLAS TEXAS 75251**

Security National Insurance Company

INSURANCE IS PROVIDED BY
THE COMPANY DESIGNATED ON THE
DECLARATIONS PAGE
(A Stock Insurance Company)

THIS POLICY CONSISTS OF:
-- DECLARATIONS
-- COMMON POLICY CONDITIONS
-- ONE OR MORE COVERAGE PARTS, and
-- APPLICABLE FORMS AND ENDORSEMENTS

## Read Your Policy Carefully

This policy is a legal contract between you and us. The information on this page is not the insurance contract and only the actual policy provisions will control. The policy sets forth in detail the rights and obligations of both you and us. **It is therefore important that you read your policy carefully.**

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of the policy.

This policy is signed by the President and Secretary of the insurance company and, if required by State law, this policy shall not be valid unless countersigned on the Declaration page by its authorized representative.

President                    Secretary

ILSIGDEC-B 0414

# COMMON POLICY DECLARATIONS

Security National Insurance Company
800 Superior Avenue East, 21ˢᵗ floor
Cleveland, OH 44114

NEW
_____

Renewal of Number

**Policy No.   NA113405400**

Named Insured and Mailing Address
No., Street, Town or City, County, State, Zip Code)

MICHAEL M WALKER
DBA:IMPERA CONTRACTING
12 EAST KILLIEGREY ST
LILLINGTON, NC 27546

Producer and Mailing Address
No., Street, Town or City, County, State, Zip Code)

BUILDERS & TRADESMEN'S INS SVC
6610 SIERRA COLLEGE BLVD
ROCKLIN, CA 95677
TEL: (877) 649-6682

Tax State   NC

Policy Period:      From   09-03-2015  to   09-03-2016     at 12:01 A.M. Standard Time
at your mailing address shown above.

Form of Business:   Individual

Business Description:   CONCRETE CONSTRUCTION

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

|  | PREMIUM |
|---|---|
| Commercial Property Coverage Part | $ _Not Covered_ |
| Commercial General Liability Coverage Part | $        454.00 |
|  | $_____ |
|  | $_____ |
|  | $_____ |
| Policy Fee: $150.00 | $        150.00 |
| TOTAL | $        604.00 |

Form(s) and Endorsement(s) made a part of this policy at time of issue *:

See Schedule of Applicable Forms

* Omits applicable Forms and Endorsements if shown in specific Coverage Part/Coverage Form Declarations.

Countersigned:   09-10-15    MJD

By _____
Authorized Representative

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.
Includes copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, Inc., 1983, 1984

# SCHEDULE OF APPLICABLE FORMS

| Form Title | Form Number |
|---|---|
| Policy Jacket | 31-3754 06-08 |
| Read Your Policy Carefully | ILSIGDEC-B 0414 |
| Common Policy Declarations | 49-0120 07 11 |
| Common Policy Conditions | IL 00 17 11 98 |
| Nuclear Energy Liability Exclusion Endorsement | IL 00 21 09 08 |
| North Carolina Changes - Cancellation And Nonrenewal | IL 02 69 09 08 |
| General Liability Coverage Part Declarations | 49-0118 07 11 |
| Exclusion Earth Movement | 49-0100 07 11 |
| Changes In Commercial General Liability | 49-0101 07 11 |
| Service Of Suit | 49-0102 07 11 |
| Amendment Employer's Liability Exclusion | 49-0103 07 11 |
| Amendment To Other Insurance Condition | 49-0104 07 11 |
| Policyholder Disclosure Notice of Terrorism Insurance Coverage | 49-0106 07 15 |
| Exclusion - Condominiums, Townhouses, Timeshares And Tracts | 49-0107 07 11 |
| Blanket Additional Insureds Owners, Lessees Or Contractors | 49-0108 07 11 |
| Continuous Or Progressive Injury And Damage Exclusion | 49-0110 07 11 |
| Exclusion - Prior Completed Or Abandoned Work | 49-0115 07 11 |
| Independent Contractors Limitation Endorsement | 49-0157 06 13 |
| Commercial General Liability Coverage Form | CG 00 01 12 07 |
| Recording And Distribution Of Material Or Information In Violation Of Law Exclusion | CG 00 68 05 09 |
| Deductible Liability Insurance | CG 03 00 01 96 |
| Exclusion - Designated Work | CG 21 34 CM 01 87 |
| Exclusion - Designated Work | CG 21 34 NH 01 87 |
| Employment-Related Practices Exclusion | CG 21 47 07 98 |
| Exclusion - Designated Ongoing Operations | CG 21 53 CM 01 96 |
| Exclusion - Designated Ongoing Operations | CG 21 53 NH 01 96 |
| Exclusion - Designated Operations Covered By a Consolidated (Wrap-up) Insurance Program | CG 21 54 A 07 05 |
| Fungi Or Bacteria Exclusion | CG 21 67 12 04 |
| Exclusion - Exterior Insulation And Finish Systems | CG 21 86 12 04 |
| Exclusion - Engineers, Architects or Surveyors Professional Liability | CG 22 43 07 98 |
| Exclusion - Contractors - Professional Liability | CG 22 79 07 98 |
| Exclusion of Certified Acts of Terrorism | CG 21 73 01 15 |
| Contractors Errors and Omissions (Without Labor) | 49-0138 07 11 |
| Exclusion - Designated Work | CG 21 34 NR 01 87 |
| Exclusion - Designated Ongoing Operations | CG 21 53 NR 01 96 |

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NORTH CAROLINA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation Requirements**

    **a. Policies In Effect Less Than 60 Days**

        If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

        **(1)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

    **b. Policies In Effect More Than 60 Days**

        If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy prior to the:

        **(1)** Expiration of the policy term; or

        **(2)** Anniversary date,

        stated in the policy only for one or more of the following reasons:

        **(a)** Nonpayment of premium;

**(b)** An act or omission by the insured or his or her representative that constitutes material misrepresentation or nondisclosure of a material fact in obtaining this policy, continuing this policy or presenting a claim under this policy;

**(c)** Increased hazard or material change in the risk assumed that could not have been reasonably contemplated by the parties at the time of assumption of the risk;

**(d)** Substantial breach of contractual duties, conditions or warranties that materially affects the insurability of the risk;

**(e)** A fraudulent act against us by the insured or his or her representative that materially affects the insurability of the risk;

**(f)** Willful failure by the insured or his or her representative to institute reasonable loss control measures that materially affect the insurability of the risk after written notice by us;

Case 5:18-cv-00331-D Document 1-1 Filed 07/05/18 Page 22 of 150
Policy Page 14

(g) Loss of facultative reinsurance, or loss of or substantial changes in applicable reinsurance as provided in G.S. 58-41-30;

(h) Conviction of the insured of a crime arising out of acts that materially affect the insurability of the risk;

(i) A determination by the Commissioner of Insurance that the continuation of the policy would place us in violation of the laws of North Carolina; or

(j) You fail to meet the requirements contained in our corporate charter, articles of incorporation or by-laws when we are a company organized for the sole purpose of providing members of an organization with insurance coverage in North Carolina.

We will mail or deliver written notice of cancellation to the first Named Insured at least:

    (i) 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    (ii) 30 days before the effective date of cancellation if we cancel for any other reason.

c. Cancellation for nonpayment of premium will not become effective if you pay the premium amount due before the effective date of cancellation.

d. We may also cancel this policy for any reason not stated above provided we obtain your prior written consent.

B. The following provisions are added and supersede any other provisions to the contrary:

1. Nonrenewal

a. If we elect not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of nonrenewal at least 45 days prior to the:

(1) Expiration of the policy if this policy has been written for one year or less; or

(2) Anniversary date of the policy if this policy has been written for more than one year or for an indefinite term.

b. We need not mail or deliver the notice of nonrenewal if you have:

(1) Insured property covered under this policy, under any other insurance policy;

(2) Accepted replacement coverage; or

(3) Requested or agreed to nonrenewal of this policy.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

2. The written notice of cancellation or nonrenewal will:

a. Be mailed or delivered to the first Named Insured and any designated mortgagee or loss payee at their addresses shown in the policy, or if not indicated in the policy, at their last known addresses; and

b. State the reason or reasons for cancellation or nonrenewal.

# COMMERCIAL GENERAL LIABILITY COVERAGE PART
## DECLARATIONS

Policy No. NA113405400

Effective Date: 09-03-2015
12:01 A.M. Standard Time

### LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products - Completed Operations) | $ 2,000,000 | |
| Products – Completed Operations Aggregate Limit | $ 2,000,000 | |
| Personal and Advertising Injury Limit | $ 1,000,000 | |
| Each Occurrence Limit | $ 1,000,000 | |
| Damage to Premises Rented to You (Fire Damage) Limit | $ 100,000 | Any One Premises |
| Medical Expense Limit | $ 5,000 | Any One Person |

### LOCATION OF PREMISES

Location of All Premises You Own, Rent or Occupy:
12 EAST KILLIEGREY ST, LILLINGTON, NC 27546

### PREMIUM

| | | | Rate | | Advance Premium | |
|---|---|---|---|---|---|---|
| Classification | Code No. | Premium Basis | Pr/Co | All Other | Pr/Co | All Other |
| CONCRETE CONSTRUCTION | 91560 | 40,800 (p) | INCL | 10.388 | INCL | 424 |
| FAULTY WORKMANSHIP | 73444 | (c) | INCL | | INCL | 30 |
| | | | | Total Advance Premium | | 454 |

| | | |
|---|---|---|
| (a) area – per 1000 sq. ft. | (m) admissions – per 1000 | (e) each |
| (s) gross sales – per $1000 | (p) payroll – per $1000 | (c) total cost – per $1000 |

(u) units

### FORMS AND ENDORSMENTS (other than applicable Forms and Endorsements shown elsewhere in the policy)
Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:

See Schedule of Applicable Forms

*Information Omitted if shown elsewhere in the policy
THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS THE NAME OF THE INSURED AND THE POLICY PERIOD.
This page alone does not provide coverage and must be attached to a Commercial Lines Common Policy Declarations Page,
Common Policy Conditions, Coverage Part Coverage Form(s) and any other applicable forms and endorsements.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# EXCLUSION – EARTH MOVEMENT

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to and the Company shall have no duty to defend any claim or "suit" seeking damages for "bodily injury", "property damage", or "personal and advertising injury" which was directly or indirectly, based upon or contributed to in whole or in part, arising out of resulting from or in any matter related to "earth movement" whether or not any such "earth movement" is combined with any other causes.

The term "earth movement" includes, but is not limited to, earthquake, landslide, subsidence, mud flow, sinkhole, erosion, or the sinking, rising, shifting, expanding, vibrating or contracting of earth or soil, or any other movement of land, soil or earth.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**CHANGES IN COMMERCIAL GENERAL LIABILITY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion 2.f of **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is replaced by the following:

Pollution
(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to:
(a) "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; or
(b) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:
  (i) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or
  (ii) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".
(2) Any loss, cost or expense arising out of any:
(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or
(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

B. **SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** is amended to add the following to paragraph 2.

This insurance does not apply to:

"Personal and advertising injury" to an "employee" of the insured, arising out of and in the course of employment by the insured.

C. **SECTION III - LIMITS OF INSURANCE** is amended to add the following to paragraph 5.:

The Each Occurrence Limit is the most we will pay regardless of the number of policy(ies) issued to an insured by us which may apply to the same "occurrence".

D. Additional Exclusions applicable to **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

This insurance does not apply to:

1. Punitive or Exemplary Damage

   If a "suit" is brought against the insured for damages covered by this policy, seeking both

compensatory and punitive or exemplary damages, we will afford a defense to such action. We will not have an obligation to pay for any costs, interests or damages attributable to punitive or exemplary damages. This exclusion does not apply in any state where such endorsement is expressly prohibited by state law or insurance department regulations.

2. Asbestos

"Bodily injury", "property damage", or "personal and advertising injury" arising out of:

a) The use of asbestos in constructing or manufacturing any good, product or structure; or

b) The removal of asbestos from any good, product or structure; or

c) The manufacture, transportation, storage, service, installation, use, sales, mining, distribution or disposal of asbestos or goods or products containing asbestos; or

d) Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos; or

e) Any loss, cost or expense related to any of the above.

3. Abuse or Molestation

"bodily injury", "property damage" or "personal and advertising injury" arising out of:

a). The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

b). The negligent:
   i. Employment;
   ii. Investigation;
   iii. Supervision;
   iv.. Reporting to the proper authorities, or failure to so report; or
   v. Retention;
   of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1. above.

4. Communicable Disease / Sexual Action

"Bodily injury", "property damage", or "personal

and advertising injury" arising out of the:

a) Transmission, actual or alleged, of a communicable disease by any insured, including, but not limited to, Acquired Immune Deficiency Syndrome (AIDS);

b) Failure to perform services which were either intended to or assumed to prevent communicable diseases or their transmission to others; or

c) Sexual action, including but not limited to any verbal or nonverbal communication, behavior or conduct with sexual connotations or purposes, whether for sexual gratification, discrimination, intimidation, coercion or other purpose, regardless of whether such action is alleged to be intentional or negligent.

5. Professional Services

"Bodily injury", "property damage", or "personal and advertising injury" arising out of the rendering or failure to render any professional service.

6. Athletic Participants

"Bodily injury", "property damage", or "personal and advertising injury" to any person while practicing for or participating in any contest or exhibition of an athletic or sports nature.

7. Lead

"Bodily injury", "property damage", or "personal and advertising injury" arising out of exposure to, inhalation of, or ingestion of lead or any substance or matter containing lead or the residue of lead.

8. Cross Suits

The liability of any Named Insured for any "bodily injury", "property damage", or "personal and advertising injury" which is sustained by or occurs to any Named Insured.

9. Sulfates

Any claim based in whole or in part for bodily injury or property damage which was, directly or indirectly, based upon or contributed to in whole or in part, arising out of, resulting from, or in any manner related to exposure to or the absorption of sulfates, whether such sulfates

are in a pure form or were combined with any other chemical or material.

10. Chromated Copper Arsenate (CCA)

Any loss or liability, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of the attorneys, experts, or consultants arising out of or in any way related, either directly or indirectly, to:

a. Chromated copper arsenate, chromated copper arsenate products, chromated copper arsenate-containing materials or products, including but not limited to manufacturing, use, sale, installation, removal or distribution activities;

b. Exposure to, testing for, monitoring of, cleaning up, removing, containing or treating of chromated copper arsenate, chromated copper arsenate products, chromated copper arsenate-containing materials or products;

c. Any obligation to investigate, settle or defend, or indemnify any person against any claim or "suit" arising out of, or related in any way, either directly or indirectly, to chromated copper arsenate, chromated copper arsenate products, chromated copper arsenate-containing materials or products.

11. Fire Retardant Treated (FRT) Wood
Any loss or liability, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of the attorneys, experts, or consultants arising out of or in any way related, either directly or indirectly, to:

a. Fire Retardant Treated Wood, Fire Retardant Treated Wood products, Fire Retardant Treated Wood containing materials or products, including but not limited to manufacturing, use, sale, installation, removal or distribution activities;

b. Exposure to, testing for, monitoring of, cleaning up, removing, containing or treating of Fire Retardant Treated Wood, Fire Retardant Treated Wood products,

Fire Retardant Treated Wood -containing materials or products;

c. Any obligation to investigate, settle or defend, or indemnify any person against any claim or "suit" arising out of, or related in any way, either directly or indirectly, to, Fire Retardant Treated Wood, Fire Retardant Treated Wood products, Fire Retardant Treated Wood -containing materials or products.

12. Silica, Silica Dust Or Mixed Dust

a. (1). "bodily injury", "property damage" or medical expenses of any type, arising out of the inhalation, ingestion, physical exposure to, absorption of, or toxic substances from silica, silica dust or "mixed dust" in any form, or from any goods, products or structures containing silica, silica dust or "mixed dust" in any form, or

   (2). "property damage" or devaluation of property arising from any form of silica, silica dust or "mixed dust", in any form,
   regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to any such injury or damage.

b. any loss, cost or expenses arising out of
   (1). the existence of silica, silica dust or "mixed dust", in any form, in any occupancy, structure or construction, or
   (2). goods, products or structures containing silica, silica dust or "mixed dust", in any form;

c. any loss, cost or expenses arising out of :
   (1). the manufacture, sale, transportation, distribution, use, installation handling or storage of silica, silica dust or "mixed dust", in any form, or
   (2). the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in anyway responding to or assessing the effects of silica, silica dust or "mixed dust", in any form, or

(3). any supervision, instructions, recommendations, requests, warnings or advice given or which should have be given in relation to silica, silica dust or "mixed dust", in any form,

by any insured or by any other person or entity.

"Mixed dust" includes any dust particles from quartz, metallic or fibrous mineral

E. **SECTION V - DEFINITIONS** is amended as follows:

1. "Employee" includes a "leased worker" and a "temporary worker".

2. Paragraph 19. "Temporary worker" is amended as follows:

"Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term work load conditions. "Temporary worker" includes casual labor.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# SERVICE OF SUIT

It is agreed that the service of process in suit may be made upon:

Corporation Service Company
2711 Centerville Road
Suite 400
Wilmington, DE 19808

and that in any suit instituted against any one of them upon this contract, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of the Company in any such suit and/or upon the request of the Insured to give a written undertaking to the Insured that they will enter a general appearance upon the Company behalf in the event such a suite shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Company hereon hereby designates the Superintendent, Commissioner, or Director of Insurance or other officer specified for that purpose in statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# AMENDMENT – EMPLOYER'S LIABILITY EXCLUSION
## (EXCLUSION – BODILY INJURY TO EMPLOYEES – ABSOLUTE)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion e. Employer's Liability of item 2. Exclusions, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, SECTION I - COVERAGES is replaced by the following:

e.  Employers Liability

"Bodily Injury" to:

(1)  An "employee" or "temporary worker" of any insured arising out of and in the course of:

    (a)  Employment by any insured; or

    (b)  Performing duties related to the conduct of an insured's business; or

(2)  The spouse, child, parent, brother of sister of that "employee" or "temporary worker" as a consequence of paragraph (1) above.

This exclusion applies:

(1)  Whether an insured may be liable as an employer or in any other capacity; and

(2)  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# AMENDMENT TO OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Condition 4 Other insurance of SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS is deleted in its entirety and is replaced by the following

4. Other Insurance

    a. Primary Insurance

        This insurance is primary except when below applies.

    b. Excess Insurance

        This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:

        1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for your work;

        2) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

        3) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner.

        4) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to exclusion g. of Section I - Coverage A-Bodily Injury And Property Damage Liability; or

        5) That is valid and collectible insurance available to you under any other policy

    When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's right against all those other insurers.

    When this insurance is excess over other insurance, we will pay only the amount of the loss, if any, that exceeds the sum of:

    1) The total amount that all such other insurance would pay for the loss in the absence of this insurance· and

    2) The total of all deductible and self insured amounts under all other Insurance

    If a loss occurs involving two or more policies, each of which states that its insurance will be excess, then our policy will contribute on a pro rata basis.

Case 5:18-cv-00331-D   Document 1-1   Filed 07/05/18   Page 32 of 150
Policy Page 24

POLICYHOLDER DISCLOSURE
NOTICE OF TERRORISM
INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act of 2002, as amended by the Terrorism Risk Insurance Program Reauthorization act of 2007 and as further amended by the Terrorism Risk Insurance Program Reauthorization Act of 2015, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, *as defined in Section 102(1) of the Terrorism Risk Insurance Act of 2002, as amended by the Terrorism Risk Insurance Program Reauthorization act of 2007 and as further amended by the Terrorism Risk Insurance Program Reauthorization Act of 2015,*. The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 and 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

**Acceptance or Rejection of Terrorism Insurance Coverage**

| | |
|---|---|
| | I hereby elect to purchase terrorism coverage for a prospective premium of $100.00 . |
| | I hereby decline to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism. |

_____
Policyholder/Applicant's Signature

_____
Print Name

_____
Date

Security National Insurance Company
Insurance Company

NA113405400
Policy Number

49–0106 07 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# EXCLUSION - CONDOMINIUMS, TOWNHOUSES, TIME-SHARES, AND TRACTS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

This insurance does not apply to and the Company shall have no duty to defend any claim or "suit" seeking damages for "bodily injury", "property damage", or "personal and advertising injury" arising out of any work involving, related to, or performed about the premises of:

1.   Condominiums or townhouses;

2.   Any location which has been or becomes converted into condominiums or townhouses, regardless of whether:
     a.    any insured had involvement in the conversion;
     b.    any insured had knowledge of the conversion;
     c.    the conversion is prior to or subsequent to any insured's work at the location

3.   Timeshare development; or

4.   Any project or premise on which more than 10 houses have been built or are in any stage of development, planning, or construction.

This exclusion does not apply to:

1.   Non-Structural remodeling or repair of the dwelling unit for the dwelling unit owner on premises described in paragraphs 1, 2, or 3 above; or

2.   Remodeling or additions to a single house in a development described in paragraph 4 above.

3.   Maintenance, service, or non-structural repairs to common areas of a completed and occupied development or project described in paragraph 1 above.

4.   Work done on a new single custom home for an individual in a development described in paragraph 4 above.

# BLANKET ADDITIONAL INSUREDS -
# OWNERS, LESSEES OR CONTRACTORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Policy Number: NA113405400 | Endorsement Effective: 09/03/15   12:01 a.m. |
|---|---|
| Named Insured<br><br>MICHAEL M WALKER<br>IMPERA CONTRACTING | Authorized Representative: |

### SCHEDULE

| Name of Person or Organization: |
|---|
| Any person or organization that the named insured is obligated by virtue of a written contract or agreement to provide insurance such as is afforded by this policy. |
| Location: |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** **Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only to the extent that the person or organization shown in the Schedule is held liable for your acts or omissions arising out of your ongoing operations performed for that insured.

**B.** With respect to the insurance afforded to these additional insureds, the following exclusion is added:

**2. Exclusions**

This insurance does not apply to "bodily injury" or "property damage" occurring after:

(1) All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

(2) That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**C.** The words "you" and "your" refer to the Named Insured shown in the Declarations.

**D.** "Your work" means work or operations performed by you or on your behalf; and materials, parts or equipment furnished in connection with such work or operations.

Primary Wording

If required by written contract or agreement: Such insurance as is afforded by this policy shall be primary insurance, and any insurance or self-insurance maintained by the above additional insured(s) shall be excess of the insurance afforded to the named insured and shall not contribute to it.

Waiver of Subrogation

If required by written contract or agreement: We waive any right of recovery we may have against an entity that is an additional insured per the terms of this endorsement because of payments we make for injury or damage arising out of "your work" done under a contract with that person or organization.

49-0108 07 11          May Include Copyrighted Material of Insurance Services Offices, Inc.          Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# CONTINUOUS OR PROGRESSIVE INJURY AND DAMAGE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Insuring Agreement under **SECTION I.**, Coverage **A.**, paragraph **b.(3)**, paragraph **c.**, and paragraph **d., (1), (2), (3)** are replaced by the following:

This insurance does not apply to any damages because of or related to "bodily injury", "property damage", or "personal and advertising injury:"

**c.**

    **(1)**    which first existed, or alleged to have first existed, prior to the inception date of this Policy; or

    **(2)**    which are, or are alleged to be, in the process of taking place prior to the inception date of this Policy, even if the actual or alleged "bodily injury", "property damage", or "personal and advertising injury" continues during this policy period; or

    **(3)**    which were caused, or are alleged to have been caused, by the same condition which resulted in "bodily injury", "property damage", or "personal and advertising injury" which first existed prior to the inception date of this Policy.

We shall have no duty to defend any insured against any loss, claim, "suit", or other proceeding alleging damages arising out of or related to "bodily injury", "property damage", or "personal and advertising injury" to which this endorsement applies.

"Allocated Loss Adjustment Expenses" means loss adjustment expenses that are assignable or allocable to a specific claim and all Supplementary Payments – Coverages A and B, as defined in Section 1., Supplementary Payments, paragraphs 1. and 2. of the policy.

"Independent Contractor" means any contractor or subcontractor working directly or indirectly on your behalf.

This insurance shall not apply to any liability, damages or expenses which an independent contractor or subcontractor is legally obligated to pay.

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2006

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2006

CG 00 01 12 07

Case 5:18-cv-00331-D   Document 1-1   Filed 07/05/18   Page 41 of 150
Policy Page 33

f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

Case 5:18-cv-00331-D   Document 1-1   Filed 07/05/18   Page 42 of 150
Policy Page 34

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

### g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 26 feet long; and

    (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

    (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

    (b) the operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

### h. Mobile Equipment

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

### i. War

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

### j. Damage To Property

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

© ISO Properties, Inc., 2006

CG 00 01 12 07

□

Case 5:18-cv-00331-D   Document 1-1   Filed 07/05/18   Page 43 of 150
Policy Page 35

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III -- Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

p. **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

q. **Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

© ISO Properties, Inc., 2006  CG 00 01 12 07  ☐

Case 5:18-cv-00331-D   Document 1-1   Filed 07/05/18   Page 45 of 150
Policy Page 37

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k.  Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l.  Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m.  Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n.  Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o.  War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p.  Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C MEDICAL PAYMENTS**

**1.  Insuring Agreement**

a.  We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b.  We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

Case 5:18-cv-00331-D   Document 1-1   Filed 07/05/18   Page 46 of 150
Policy Page 38

## 2. Exclusions

We will not pay expenses for "bodily injury":

### a. Any Insured

To any insured, except "volunteer workers".

### b. Hired Person

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

### c. Injury On Normally Occupied Premises

To a person injured on that part of premises you own or rent that the person normally occupies.

### d. Workers Compensation And Similar Laws

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

### e. Athletics Activities

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

### f. Products-Completed Operations Hazard

Included within the "products-completed operations hazard".

### g. Coverage A Exclusions

Excluded under Coverage A.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   f. The indemnitee:

      (1) Agrees in writing to:

         (a) Cooperate with us in the investigation, settlement or defense of the "suit";

         (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

         (c) Notify any other insurer whose coverage is available to the indemnitee; and

         (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

      (2) Provides us with written authorization to:

         (a) Obtain records and other information related to the "suit"; and

© ISO Properties, Inc., 2006 CG 00 01 12 07 ☐

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

Case 5:18-cv-00331-D   Document 1-1   Filed 07/05/18   Page 48 of 150
Policy Page 40

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage C;

**b.** Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage B.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage A; and

**b.** Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

© ISO Properties, Inc., 2006 CG 00 01 12 07 □

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

b. **Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

(2) When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    (a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    (b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

    **a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

    **b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

    **c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

    **a.** The statements in the Declarations are accurate and complete;

    **b.** Those statements are based upon representations you made to us; and

    **c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

    **a.** As if each Named Insured were the only Named Insured; and

    **b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    **b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

    **a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

    **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

© ISO Properties, Inc., 2006 CG 00 01 12 07 ☐

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in Paragraph a. above;

      (2) The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1) Equipment designed primarily for:

      (a) Snow removal;

      (b) Road maintenance, but not construction or resurfacing; or

      (c) Street cleaning;

   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2006 CG 00 01 12 07 □

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured,

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      **(2)** The providing of or failure to provide warnings or instructions.

  **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

  **a.** Means:

      **(1)** Work or operations performed by you or on your behalf; and

      **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes:

      **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

      **(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2006       CG 00 01 12 07 □

# RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **q.** of Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**B.** Exclusion **p.** of Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| | PER CLAIM | or  PER OCCURRENCE |
| Bodily Injury Liability | $ | $ |
| OR | | |
| Property Damage Liability | $  800 | $ |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

A. Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

B. You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

1. PER CLAIM BASIS. If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

   a. Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

   b. Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

   c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

      (1) "Bodily injury";

      (2) "Property damage"; or

      (3) "Bodily injury" and "property damage" combined

   as the result of any one "occurrence".

   If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

   With respect to "property damage", person includes an organization.

   Copyright, Insurance Services Office, Inc., 1994

2. **PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

b. Under Property Damage Liability Coverage, to all damages because of "property damage"; or

c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

(1) "Bodily injury";

(2) "Property damage"; or

(3) "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

C. The terms of this insurance, including those with respect to:

1. Our right and duty to defend the insured against any "suits" seeking those damages; and

2. Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

D. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Copyright, Insurance Services Office, Inc., 1994

CG 03 00 01 96 □

**COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED WORK

This endorsement modifies insurance provided under the following:

 COMMERCIAL GENERAL LIABILITY COVERAGE PART
 PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Description of your work:**

Construction management for a fee

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

**CG 21 34 CM 01 87**     Includes Copyrighted Material of Insurance Services Office, Inc.     **Page 1 of 1**     ☐

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED WORK

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Description of your work:**

CONSTRUCTION OF NEW HOMES AS A GENERAL CONTRACTOR OR DEVELOPER.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

**CG 21 34 NH 01 87**    Includes Copyrighted Material of Insurance Services Office,    **Page 1 of 1**    ☐
                                                Inc.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions. such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity: and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions. such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED ONGOING OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Description of Designated Ongoing Operation(s):**

Construction management for a fee

**Specified Location (If Applicable):**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2.,** Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section 1 – Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf. If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described ongoing operations conducted at that "location".

For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED ONGOING OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Description of Designated Ongoing Operation(s):**

Construction of new homes as a general contractor or developer

**Specified Location (If Applicable):**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2.,** Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf. If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described ongoing operations conducted at that "location".

For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

Description and Location of Operation(s):

1. ALL OPERATIONS AT LOCATIONS AT WHICH THE INSURED WAS AT ANY TIME COVERED UNDER A WRAP-UP PROGRAM, AND

2. OPERATIONS AT ANY LOCATION FOR OR RELATED TO THE INSURED'S WORK UNDER A WRAP-UP PROGRAM.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section 1 – Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:
**(1)** Provides coverage identical to that provided by this Coverage Part;

**(2)** Has limits adequate to cover all claims; or

**(3)** Remains in effect.

CG 21 54A  7/2005

Includes Copyrighted Material of Insurance Services Office, Inc.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of Section I – Coverage A – Bodily Injury And Property Damage Liability:

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of Section I – Coverage B – Personal And Advertising Injury Liability:

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

1. The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

2. "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

1. A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

2. The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

3. A reinforced or unreinforced base coat;

4. A finish coat providing surface texture to which color may be added; and

5. Any flashing, caulking or sealant used with the system for any purpose.

 © ISO Properties, Inc., 2003

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2. Supervisory, inspection, architectural or engineering activities.

 Copyright, Insurance Services Office, Inc., 1997

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability and Paragraph 2., Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:

1.  This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

    a.  Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

    b.  Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

2.  Subject to Paragraph 3. below, professional services include:

    a.  Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

    b.  Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3.  Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

Copyright, Insurance Services Office, Inc., 1997

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

    **a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

    **b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

© Insurance Services Office, Inc., 2014

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTORS ERRORS AND OMISSIONS (WITHOUT LABOR)

### THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE
### PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Limits Of Insurance | | Per "Claim" Deductible | Total Premium | |
|---|---|---|---|---|
| $ 10,000 | Per "Claim" Limit | $ 500 | $ | 30 |
| $ 10,000 | Aggregate Limit | | | |
| **Retroactive Date:** | 09/03/15 | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | |

**SECTION I – COVERAGES** is amended as follows:

**A.** The following is added to Coverage A:

**COVERAGE – ERROR AND OMISSIONS**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "contractors' errors and omissions" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any incident and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages for "contractors' errors and omissions" in any one "claim: is $10,000, subject to an aggregate limit of $10,000, in excess of a $500 deductible, unless other amounts are indicated in the Schedule of this endorsement; and

(2) Our right and duty to defend ends when we have paid or tendered for settlement the applicable limit of insurance in the payment of judgments or settlements for "contractors' errors and omissions".

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

b. This insurance applies to "contractors' errors and omissions" only if:

(1) The "contractors' errors and omissions" takes place in the United States of America (including its territories and possessions); and

(2) The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule of this endorsement nor after the end of the policy period; and

**(3)** A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **d.** below, during the policy period or an Extended Reporting Period we provide under Paragraph **E.** of this endorsement; and

**(4)** The insured issued a written contract or work order prior to initiating "your work". However, this only applies if the estimated cost of "your work" was over \$500.

**c.** All "contractors' error and omissions" performed by you at any one location will be deemed to have been performed at the time any "contractors' errors and omissions" at that location were first performed.

**d.** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

**(1)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or;

**(2)** When we make settlement in accordance with Paragraph **1.a.** above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the "claim".

**B.** For the purposes of the coverage provided by this endorsement, the following is added to Coverage A, Paragraph 2. Exclusions

This insurance does not apply to:

**1. Architectural, Drafting or Engineering Services**

Architectural, drafting or engineering service provided by the insured including:

**a.** Preparation, approval, or failure to prepare or approve maps, shop drawings, plans, opinions, reports, surveys, field orders, change orders, designs, or drawings and specifications; and

**b.** Supervisory or inspection activities performed as part of any related architectural or engineering activities.

However, this exclusion shall not apply to claims arising from the architectural, engineering or drafting services provided by you if such services are within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

**2. Bankruptcy**

Any liability arising out of your bankruptcy or insolvency.

**3. Bodily Injury, Personal and Advertising Injury**

**a.** "Bodily injury" including sickness, disease or death resulting; and

**b.** "Personal and advertising injury".

**4. Copyright Infringement**

Damages which arise out of infringement of copyright or trademark or patent; unfair competition or piracy; or theft or wrongful taking of concepts or intellectual property.

**5. Contractual Liability**

"Contractors' errors and omissions" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**6. Delay**

Delay or failure by you or anyone acting on your behalf to perform a contract or agreement on time.

**7. Dishonest, Fraudulent, Expected, Intended, Criminal Or Malicious Acts**

Damages arising out of any expected, intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**8. Estimates, Financing and Legal Work**

Any liability because of an error or omission:

**a.** In the preparation of estimates of probable job costs, or cost estimates being exceeded; estimates of profit or return on capital;

**b.** In advising or failure to advise on financing of the work or project;

**c.** In advising or failing to advise on any legal work, title checks, form of insurance, or suretyship.

**9. Fines And Penalties**

Any fines, penalties, punitive or exemplary or other non-compensatory damages imposed upon the insured.

However, if we defend the insured against a "suit" seeking damages for "contractors' errors and omissions" and the "suit" seeks both

compensatory and punitive or exemplary damages, we will afford a defense to such actions, but will not be liable for any punitive or exemplary damages or fines, penalties or other non-compensatory damages.

10. **Manufacturer's Warranty**

   Express manufacturer's warranties or guarantees.

11. **Ongoing Work**

   "Your work" that has not been completed. "Your work" will be deemed to be completed at the earliest of the following times:

   **a.** When all of your work at the location has been completed; or

   **b.** When that part of your work at a location has been put to its intended use by any person or organization other than another contractor or subcontractor working at the same location.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

12. **Owned Property**

   Damage to property owned by, rented or leased by the insured.

13. **Pollution Loss, Cost Or Expense**

   Any loss, cost or expense arising out of any:

   **a.** Request, demand, order or statutory, governmental or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   **b.** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

14. **Subcontracted Work**

   "Contractors' errors and omissions" performed by a subcontractor.

15. **Substitution**

   Any liability from a decision to substitute a material or product for one specified on blueprints, work orders, contracts or engineering specifications unless there has been written authorization.

16. **Nuclear**

This insurance does not apply to injury, sickness, disease, death, damage or destruction.

**a.** Under "contractors errors and omissions":

   **(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

      **(a)** Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

      **(b)** The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**b.** "Contractors' errors and omissions" resulting from the "hazardous properties" of the "nuclear material"; if:

   **(1)** The "nuclear material":

      **(a)** Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

      **(b)** Has been discharged or dispersed therefrom;

   **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

   **(3)** The "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**c.** As used in this exclusion:

49 0428 7 11

**(1)** "By-product material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(2)** "Hazardous properties" include radioactive, toxic or explosive properties,

**(3)** "Nuclear facility" means:

    **(a)** Any "nuclear reactor";

    **(b)** Any equipment or device designed or used for:

        **(i)** Separating the isotopes of uranium or plutonium;

        **(ii)** Processing or utilizing "spent fuel"; or

        **(iii)** Handling, processing or packaging "waste";

    **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**(4)** "Nuclear material" means "source material", "special nuclear material" or "by-product material";

**(5)** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**(6)** "Property damage" includes all forms of radioactive contamination of property.

**(7)** "Source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(8)** "Special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(9)** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

**(10)** "Waste" means any waste material:

    **(a)** Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

    **(b)** Resulting from the operation by any person or organization of any "nuclear facility" included under Paragraphs **(a)** and **(b)** of the definition of "nuclear facility".

**17.**   **Labor Charges Or Profit**

    Your labor charges, whether performed by you or on your behalf. We will not pay for any profit or loss of profit.

**C.** For the purposes of the coverage provided by this endorsement **SECTION III – Limits of Insurance** , is replaced by the following:

**1. Limits Of Insurance**

    **a.** The Limits of Insurance shown in the Schedule of this endorsement and the rules below fix the most we will pay regardless of the number of:

        **(1)** Insureds;

        **(2)** "Claims" made or "suits" brought;

        **(3)** Persons or organizations making "claims" or bringing "suits"; or

        **(4)** Acts, errors or omissions.

    **b.** The Aggregate Limit of this endorsement is the most we will pay for all damages because of all acts, errors or omissions committed during the policy period.

    **c.** Subject to the Aggregate Limit, Per "Claim" Limit of this endorsement is the most we will pay for all damages sustained as a result of:

        **(1)** An act, error or omission; or

        **(2)** A series of related acts, errors or omissions

    **d.** We will pay for your cost of materials. We will not pay for any profit or loss of profit.

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after is-

suance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**2. Deductible**

    **a.** Our obligation to pay damages to or on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule. The Limits of Insurance shall not be reduced by the amount of this deductible.

    **b.** The terms of this insurance, including those with respect to:

        **(1)** Our right and duty to defend any "suits" seeking those damages; and

        **(2)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission; or "claim"

    apply irrespective of the application of the deductible amount.

    **c.** We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

**D.** For the purposes of the coverage provided by this endorsement, Section IV – Commercial General Liability Conditions, Paragraph 2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**, is replaced by the following:

    **2. Duties In The Event Of An Act, Error Or Omission, Or Claim Or Suit**

    **a.** We must be notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include what the act, error or omission was and when it occurred.

    **b.** If a "claim" is made or "suit" is brought against any insured, you must:

        **(1)** Immediately record the specifics of the "claim" or "suit" and the date received; and

        **(2)** Notify us as soon as practicable.

    You must also see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

    **c.** You and any other involved insured must:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

        **(2)** Authorize us to obtain records and other information;

        **(3)** Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit", and

        **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

    **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

**E.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added:

    **1.** You will have the right to purchase an Extended Reporting Period of one year, but only by an endorsement and for an extra charge.

    You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

    We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

    **a.** The type of operations conducted by the insured;

    **b.** Previous types and amounts of insurance;

    **c.** Limits of Insurance available under this endorsement for future payment of damages; and

    **d.** Other related factors.

    The additional premium will not exceed 100% of the annual premium for this endorsement.

    The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force during and after the Extended Reporting Period.

    **2.** The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date shown in

the schedule of this endorsement. Once in effect, the Extended Reporting Period may not be canceled.

3. If an Extended Reporting Period is in effect, we will provide an extended reporting period Contractors Errors and Omissions aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

The extended reporting period Contractors Errors and Omissions aggregate limit of insurance will be equal to the Aggregate Limit amount shown in the Schedule of this endorsement.

All claims arising under the Extended Reporting Period are subject to all provisions of Paragraph **C.** of this endorsement.

F. For the purposes of the coverage provided by this endorsement, the following are added to **Section V – Definitions:**

1. "Claim" means any demand, or "suit", made for damage as the result of "contractor's errors and omissions".

2. "Contractors' errors and omissions" means faulty workmanship, material or products including resulting consequential loss. The damages must have occurred while performing operations described in the Declarations.

3. **Section V – Definitions,** Paragraph 18 is replaced by the following:

18. "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

G. For the purposes of the coverage provided by this endorsement, the following Fully Earned Premium provisions are added.

1. The Total Premium shown in the Schedule is the minimum premium for this endorsement and is not subject to pro-rata, or less than pro-rata adjustment, in the event of cancellation of the policy or this endorsement by the Named Insured. Cancellation of the policy or this endorsement for nonpayment of premium is considered a request by the Named Insured for cancellation and will activate this fully earned provision.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED WORK

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Description of your work:**

- New construction of a dwelling and work within, or on, the premises of a dwelling prior to the certificate of occupancy of the owner, regardless of whether the dwelling is a custom home or the dwelling is built as part of a tract or a multi-dwelling development;

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

CG 21 34 NR 01 87

Includes Copyrighted Material of Insurance Services Office, Inc.

Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED ONGOING OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Description of Designated Ongoing Operation(s):**

- New construction of a dwelling and work within, or on, the premises of a dwelling prior to the certificate of
  occupancy of the owner, regardless of whether the dwelling is a custom home or the dwelling is
  built as part of a tract or a multi-dwelling development;

**Specified Location (If Applicable):**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as
applicable to this endorsement.)

The following exclusion is added to paragraph **2.,** Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf. If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described ongoing operations conducted at that "location".

For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

To: ty.ross@oldefayettevilleinsurance.com;
From: SERASHAW
Cc:
Bcc:
Subject: NA113405400 - IMPERA CONTRACTING
Date/Time Sent: 10/20/2015 7:14 AM

==================BEGINNING OF MESSAGE=====================

Attached is the approved AI endorsement you requested.  PLEASE NOTE IF YOU DO HAVE ANY CORRECTIONS OR CHANGES ON ANY A/I ENDORSEMENT PLEASE SEND THOSE TO Navairequests@btisinc.com. PLEASE NOTE THAT CHANGES TO THE NAME OR ADDRESSES OF THE AI CAN BE SENT TO THIS EMAIL. CHANGES TO FORM TYPE WILL NEED TO BE REQUESTED ON OUR WEBSITE AS A NEW AI. PLEASE GIVE US A CALL IF YOU HAVE ANY QUESTIONS.


Thank you for your business and have a great day!

Samantha Snow
Victory customer Service Representative
Builders & Tradesmen's Insurance Services, Inc.
(Lic.#:0D10271)
6610 Sierra College Blvd
Rocklin, Ca 95677
916.772.9200
fax 916.772.9292
ssnow@btisinc.com
www.btisinc.com


==================END OF MESSAGE=====================

Attached Files:
IR_NEFF_RENTAL_LLC110001.pdf

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) |
|---|
| NEFF RENTAL LLC<br>3750 NW 87TH AVE STE 400<br>MIAMI FL 33178 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

**B.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

© ISO Properties, Inc., 2004

**Stephanie Kaiser**

From:        Ty Ross <Ty.Ross@oldefayettevilleinsurance.com>
Sent:        Monday, October 19, 2015 4:08 PM
To:          Stephanie Kaiser
Subject:     Re: Status of AI Submission AI00302048 :Michael M Walker

They are asking for AI with regards to liability only. We have a stand alone inland Marine in place to address the loss payee

Thanks

*Sent from my Verizon Wireless 4G LTE DROID*
On Oct 19, 2015 6:41 PM, skaiser@btisinc.com wrote:
Regarding AI Submission number: AI00302048
For your applicant: Michael M Walker , DBA: Impera Contracting

Thank you for submitting your request for this additional insured.
I will need the following information before I can consider an Additional Insured Endorsement for this risk:

NA113405400 Is Neff Rental asking to be an additional insured or a loss payee? If they are asking to be a loss payee they would need to be added to an inland marine policy. Please advise. Thanks Stephanie

Confidentiality Notice: This email message is intended only for the individual or entity to which it is addressed. This email may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this email by accident, please notify the sender immediately and destroy this email and all copies of it.

1

Regarding AI Submission number: AI00302048
For your applicant: Michael M Walker , DBA: Impera Contracting

Thank you for submitting your request for this additional insured.
I will need the following information before I can consider an Additional Insured Endorsement for this risk:

NA113405400 Is Neff Rental asking to be an additional insured or a loss payee? If they are asking to be a loss payee they would need to be added to an inland marine policy. Please advise. Thanks Stephanie

# Email Engine

Thank you for submitting your request for this additional insured. I will need the following information before I can consider an Additional Insured Endorsement for this risk:

Send Mail

To: Stephanie Kaiser;
From: SBRASHAW
Cc:
Bcc:
Subject: NA113405400 - IMPERA CONTRACTING
Date/Time Sent: 10/19/2015 3:31 PM


=================BEGINNING OF MESSAGE=====================


AI IN YOUR GM.


==================END OF MESSAGE=====================

Attached Files:
IR_Policy_#__na113405400_-_AI_Application_for__Michae110003.HTM

| Submission ID: | AI00302048 |
|---|---|
| me: | Ty Ross |
| mpany: | Olde Fayetteville Ins & Finc'l Services Inc |
| c: | 910-485-6211 |
| one: | 910-483-6210 |
| ail: | ty.ross@oldefayettevilleinsurance.com |
| med Insured: | Michael M Walker |
| A: | Impera Contracting |
| ured's Policy Number: | na113405400 |
| ditional Insured: | Another Contractor/Commercial Business |

2037 - Owners, Lessees or Contractors-Completed Ops

| rtificate lder: | Neff Rental LLC |
|---|---|
| eet: | 3750 NW 87th Ave Ste 400 |
| y: | Miami |
| te: | FL |
| Code: | 33178 |

ditional Named Insured(s):

ɔ Information

ɘ there multiple jobsites for this Additional Insured? Yes

ies or Counties of jobsites       NC Cumberland County

ɔ Completed

s the project involved been completed prior to this request? No

his a residential project? No

he work being performed for a Warranty Company? No

ɪo is the insured performing the work for? Commercial Work

ɪat is the value of the insured's portion of the contract?    12000

he work being performed service, repair and/or remodel?    Yes

ɔe of construction:    public works

ecific Description of Operations and Project:
ff Rental is leasing/renting equipment to Michael M Walker dba Impera Contracting. Th
ɘasing company states that they must be listed as additional insured for liability

ecial Instructions/Requests:

**anket Additional Insured**

**heduled Additional Insured**

**l Completed Operations**

**G 20 11 - Manager or Lessor of Premises (Insured's Premises Only)**

| G 20 28 - Lessor of Leased Equipment |
| G 20 32 - Engineers, Architects or Surveyors (Not Engaged by Named Insured) |

| Edit Submission | Decline | More Info | Refer To UW |

# BRANSON CREEK RECOVERY

Thursday 10-29-15

On Site Visit- Documenting current status of site



# BRANSON CREEK RECOVERY

Friday 10-30-15

Ongoing Site Activity- Applying groundcover underlayment material over work site



NORTH CAROLINA

CUMBERLAND COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 17 CVS 3015

| | |
|---|---|
| CITY OF FAYETTEVILLE, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| IMPERA CONTRACTING, INC. and | ) |
| CHRISTOPHER LANE, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT FOR NEGLIGENCE,
FAILURE TO SUPERVISE AND
BREACH OF CONTRACT**

Plaintiff, City of Fayetteville (hereinafter "City"), complaining of the defendants, says and alleges:

## JURISDICTION AND VENUE

1.     Plaintiff City is a municipal entity located in Cumberland County and is authorized to file this action in its name.

2.     Defendant Impera Contracting, Inc. (hereinafter "Impera") is a corporation incorporated under the laws of the State of North Carolina, with its principal place of business being in Lillington, North Carolina.

3.     Upon information and belief, defendant Christopher Lane is a citizen and resident of Harnett County, North Carolina, and at all times relevant herein, was an agent and employee of defendant Impera Contracting, Inc.

4.     The Court has subject matter jurisdiction. This matter and venue is appropriate in Cumberland County where plaintiff City is located.

## FACTUAL ALLEGATIONS

5.     That on or about 8/19/15, plaintiff City issued a request for proposals for the city project known as the Sediment Basin Project at Branson Creek. "Request for Proposals" attached hereto as Exhibit A.

ANDERSON, JOHNSON,
LAWRENCE & BUTLER,
L.L.P.
PO BOX 63845
FAYETTEVILLE, NC
28305
(910) 483-1171

6. The Sediment Basin Project Request for Proposals invited price quotes from the public to, among other things, remove accumulated sediment within the basin area, an area located within a stream known as Branson Creek on the east side of McBain Drive.

7. The agreement required, among other things, that the sediment be removed in low flow areas. Prior to the beginning of the process of removing the sediment, the agreement required that Branson Creek be blocked and secured throughout the duration of the project; to bypass pump the flow of the stream; to allow as much water as possible to flow out of the basin; to install a silt fence prior to excavation in order to prevent sediment from washing back into the stream.

8. Under the agreement, sediment was to be removed along approximately 200 feet from the stream bottom, with an average of four to six feet of sediment from the basin area.

9. Defendants were on notice and had direct, and express knowledge that the basin area was a low-lying area with high moisture content and lay within an active waterway.

10. On or about 9/17/15, defendant Impera submitted an offer in the amount of $21,274.40 in response to the City's Request for Proposals. Impera offer attached hereto as Exhibit B.

11. On or about 9/30/15, the City accepted the Impera offer as the winning bid for the City's Sediment Basin Project, and informed defendant Impera of its acceptance via a City purchase order, number 127368 in the amount of $21,574.40. Acceptance attached hereto as Exhibit C.

12. The City's Request for Proposals, Exhibit A, along with the Impera offer, Exhibit B, and the City's acceptance, Exhibit C, formed a binding agreement between the parties, it being a contractual agreement between the plaintiff and defendant, having the

2

consent and mutual assent of the parties to be thereby fully bound, and fully supported by sufficient consideration.

13.    Among other relevant and material contractual terms, conditions and provisions under the agreement, the following General Contract Provisions obligated Impera as the agreements "contractor" to the City for the following:

7.    PROTECTION OF WORK, PROPERTY AND THE PUBLIC

a.    The Contractor shall be responsible for the entire site and shall provide all the necessary protections, as required by the Owner, and by laws or ordinances governing such conditions. **The Contractor shall be responsible for any damage to the Owner's property** or that of others on the job, by them, their personnel or their subcontractors, **and shall make good such damages.** The contractor shall be responsible for and pay for and pay for (sic.) any claims against the Owner.

(Exhibit A, Page 3 of 10, emphasis supplied)

14.    The agreement includes clear indemnification obligations which bound defendant Impera as contractor under the Sediment Basin Project for the following, including but not limited to:

**Contractor assumes entire responsibility and liability for losses, expenses, demand and claims in connection with arising out of any ... damage, or alleged damage, to property of the city of Fayetteville or others sustained or alleged to have been sustained in connection with or to have arisen out of or resulting from the negligence of the Contractor, his**

3

subcontractors, agents, and employees, in the performance of the work/service set forth in the Standard Specifications and Special Provisions, and any changes, addenda, or modifications including losses, expenses or damages sustained by the City of Fayetteville, **and agrees to indemnify and hold harmless the City of Fayetteville,** its officials, employees or volunteers from any and all such losses, expenses, damages, demands and claims and agrees to defend any suit or action brought against them, or any of them, based on any such alleged injury or damage, **and to pay all damages, cost and expenses in connection therewith or resulting there from ....**

(Exhibit A, Page 4 of 10, emphasis supplied)

15.     On or about 10/26/15, and continuing thereafter, the City suffered a substantial loss at the Sediment Basin Project involving the submergence and subsequent excavation of a track hoe on the City's property, its related clean up expenses and repair/restoration of damaged City property. ("Loss").

16.     In particular, the Loss that day and continuing thereafter was directly, foreseeably and approximately caused by the negligent operation by defendant Impera's employee and agent, defendant Lane, of a 2012 Kobelco SK210-9 track hoe ("Track Hoe") in the basin area, in getting the Track Hoe buried and stuck in Branson Creek.

17.     Defendant Impera and Lane's negligent and incompetent operation of the Track Hoe proximately caused the Track Hoe to become stuck and partially and mostly submerged in Branson Creek.

4

18. Upon information and belief, by 10/28/15, defendant Lane negligently caused the Track Hoe to become submerged approximately 75% under water.

19. As of 10/29/15, defendant Impera had yet to mitigate the damages it had caused, including, but not limited to, removing the Track Hoe and containing and removing any hazardous substance caused by the Track Hoe's submergence within Branson Creek and its basin area.

20. On 10/29/15, certain parties, including the City, defendant Impera, and Phillip's Towing Services, Inc. ("Phillip's Towing"), met to perform an evaluation and assessment of the site and to develop a mitigation plan ("Mitigation Plan"), the goal of which was to evacuate the Track Hoe, and clean up, restore and repair the damage to the site caused by defendants'' negligence.

21. The Mitigation Plan called for the site's excavation, cleanup, restoration and repair. Two 3rd parties were retained by the City in furtherance of the Mitigation Plan, those being Philip's Towing and Xylem Dewatering Solutions, Inc. ("Xylem Dewatering").

22. In pursuit of the Mitigation Plan, among other things, between 10/29/15 and 11/3/15, Phillip's Towing installed a containment barrier; collected, removed and disposed of soil piles; installed groundcover underlayment material and crushed stone over the worksite; assisted in the installation of a sewer bypass system; excavated and removed the Track Hoe over an existing primary sewer line; removed and disposed of residual contaminants from the containment area, including 5,400 gallons of petroleum contaminated water; performed environmental site stabilization, including temporary creek bank restoration and erosion control; provided continuous monitoring of the sewer bypass system; trailered the offending Track Hoe; and removed and transported the CAT 320 track hoe utilized by Phillip's Towing in the site preparations and recovery operations.

5

Complaint v Impera w contract docs Page 8

23.     The Mitigation Plan required the installation of a sewer bypass system. to accomplish this, the City rented this system from Xylem Dewatering. With the assistance of Phillip's Towing, between 10/30/15 and 10/31/15, Xylem Dewatering set up and installed this system.

24.     The City's expenses related to the Loss at the Sediment Basin Project for excavation of equipment, clean up expenses, and repair/restoration of the City's damaged land and creek area proximately caused by the negligence of the defendants at Branson Creek, along with defendant Impera's multiple breaches of the agreement, totaled $125,773.24, and included the cost of Phillip's Towing and Xylem Dewatering's services, in addition ot expenses incurred by the City's Public Works Commission to repair and restore the damaged land and creek area at McBain Drive.

25.     Pursuant to the agreement, among other things, the defendant Impera was obligated to indemnify the City for the $125,773.24 in expenses the City incurred related to the Loss.

26.     On or about 11/4/15, the claims administrator for the City delivered a letter to defendant Impera, providing it notice that once the claims administrator completed its investigation of the Loss, the City would look towards defendant Impera for recovery of damages that were estimated at the point in time in excess of $100,000.00 ("Notice").

27.     On or about 8/31/16, the City received a liability coverage denial letter ("Denial Letter") concerning the Loss from defendant Impera's commercial liability insurer, Security National Insurance Company ("Security National"), via Security National's claims adjusters, Kim Saxon and Maitland Claims.

28.     According to the Security National Denial Letter, Security National Insurance Company had determined that there was no coverage for the damages related to the Loss

6

Complaint v Impera w contract docs Page 9

claimed by the City "under Impera's policy" and Security National Insurance Company would not issue any payments for losses submitted under the claim.

29.     Subsequent to receiving the Denial Letter, on 9/15/16 and 11/10/16, the City made two separate demands to defendant Impera for payment owed it from defendant Impera in the amount of $125,773.24 for damages and expenses it suffered under the Loss proximately caused by defendant Impera and its employee and agent, defendant Lane ("Demand Letter").

30.     As outlined by the City's Demand Letters, the City suffered substantial damages, including out-of-pocket expenses in the amount of $125,773.24 concerning the Track Hoe excavation, cleanup, restoration, and repair, plus accrued interest and attorneys' fees incurred to date.  Under the agreement, defendant Impera was, and is, obligated to have covered and indemnified the City for these damages; including the following out-of-pocket expenses incurred by the City to mitigate the damages proximately caused by defendants' negligence:

a.     $94,996.50 for the Towing Recovery Activities by Phillip's Towing as described above;

b.     $12,308.74 for rental, delivery and installation of the sewer bypass system by Xylem Dewatering; and

c.     $18,468.00 for restoration of damaged land and creek area by Phillip's Towing.

31.     Defendant Impera has chosen to not reply to City's Demand Letters.

## FIRST CAUSE OF ACTION
### (Negligence by Defendant Impera and Defendant Lane)

32.     Plaintiff incorporates all allegations from the above paragraphs and reassert them as if they were fully alleged herein.

7

33. Defendant Impera as Contractor under the agreement owed the City the duty of ordinary care, including, but not limited to, the duty to perform with ordinary care those actions agreed to be done under the agreement, which themselves include, but are not limited to, the following terms and conditions:

> 2. Materials, Equipment, Workmanship …
>
>> b. … the Contractor shall install, maintain and remove all equipment of construction and be responsible for the safe, proper and lawful use of same and shall construct in the best and most workmanlike manner, a completed job …
>>
>> d. All work under this contract shall be performed in a skillful and workman like manner. Workmanship shall at all times be of grade accepted as the best practice of the particular trade involved … (Exhibit A, Pate 2 of 10).

34. Defendant Impera, and its employees, including defendant Lane, also owed the City the duty to protect others and their property from harm, including the City and its citizens.

35. Defendant Impera's employee and agent, defendant Lane, breached these duties by his negligent operation of the Track Hoe as described herein, including, but not limited to, not safely, properly, or lawfully using construction equipment, namely the Track How; nor using the Track Hoe in the best and most workmanlike manner. Defendants did not perform their obligations under the agreement in a skillful and workmanlike manner involving the operation of the Track Hoe. Additionally, the defendants further breached their duties owed due to their lack of timely and proper mitigation relating to the damages caused by the submergence of the Track Hoe.

8

36. Defendant Lane's negligent operation of the Track Hoe was in the course and scope of his employment and agency with defendant Impera, and meant to benefit defendant Impera, and all such negligence, which at all times defendant Lane was acting within his agency for defendant Impera, is thereby imputed to defendant Impera.

37. Defendant Lane's breach of duty proximately caused the Loss suffered by the City, including damages to the City property which resulted in the City having to pay $125,773.24 relating to excavation of the Track Hoe, clean up expenses, and repair/restoration of the City's damaged land and creek area at Branson Creek.

38. In particular, the negligent actions of defendant Lane described herein are imputed to defendant Impera via both vicarious liability and agency liability.

39. As a direct and proximate result of defendants' negligence, plaintiff City is entitled to recover against defendants, jointly and severally, for all damages caused by the Loss, including payment for the aforesaid property damage and related expenses of $125,773.24, plus pre-judgment and post-judgment interest, plus all costs and all legal expenses of pursuing this action, including, where applicable, plaintiff's attorney's fees.

## SECOND CAUSE OF ACTION
### (Negligent Supervision by Defendant Impera)

40. Plaintiff incorporates all allegations from the above paragraphs and reassert them as if they were fully alleged herein.

41. As alleged herein, defendant Lane, in operating the Track Hoe, was acting in the course and scope of his employment with, and for the express benefit of, defendant Impera.

42. As further alleged herein, defendant Lane negligently operated the Track Hoe proximately causing City substantial damages and related expenses.

9

43. Upon information and belief, defendant Lane was incompetent to operate the Track Hoe by both inherent unfitness and previous acts of negligence, from which incompetency may be inferred.

44. Upon information and belief, defendant Impera had either actual notice of such unfitness, incompetence and bad habits, or constructive notice, such that defendant Impera could, and should, have known the fact had it used ordinary care in oversight and supervision, and that the damages suffered by the City resulted from this incompetency.

45. In particular, the incompetent employee, defendant Lane, committed a tortious act resulting in injury to the City and that prior to the act, upon information and belief, the employer knew or had reason to know of the employee's incompetency.

46. As a direct and proximate result of defendant Impera's negligent supervision of defendant Lane, plaintiff City is entitled to recover against defendant Impera for all damages, including expenses, caused all damages caused by the Loss, including payment for the aforesaid property damages and related out-of-pocket expenses concerning the Track Hoe's excavation and the site's excavation, cleanup, restoration and repair, of $125,773.24, plus pre-judgment and post-judgment interest, plus all costs and all legal expenses of pursuing this action, including, where applicable, plaintiff's attorney's fees.

### THIRD CAUSE OF ACTION
#### (Breach of Contract by Defendant Impera)

47. Plaintiff incorporates all allegations from the above paragraphs and reassert them as if they are fully alleged herein.

48. Defendant Impera materially breached multiple duties it owed the City under the agreement such that these breaches caused the City substantial harm and damages, including breaching its duties under the agreement:

10

to be "responsible for any damage to the Owner's property or that of others on the job, by them, their personnel or their subcontractors,";

"to be responsible for and pay for and pay for (sic.) any claims against the Owner," specifically the invoices submitted to the City by Phillips Towing and Xylem Dewatering Solutions, inc.;

to repair and replace any work damaged though lack of proper protection without extra cost to the City;

to be responsible and liable "for losses, expenses, demands and claims in connection with or arising out of any ...damage, or alleged damage, to property of the City of Fayetteville or others sustained or alleged to have been sustained in connection with or to have arisen out of or resulting from the negligence of the Contractor [defendant Impera], his subcontractors, agents [defendant Lane], and employees [defendant Lane], in the performance of the work/service set forth in the Standard Specifications and Special Provisions, and any changes, addenda, or modifications including losses, expenses or damages sustained by the City of Fayetteville";

to "indemnify and hold harmless the City of Fayetteville, its officials, employees or volunteers from any and all such losses, expenses, damages, demands and claims and agrees to defend any suit or action brought against them, or any of them, based on any such alleged injury or damage, and to pay all damages, cost and expenses in connection therewith or resulting there from ...";

11

to install, maintain and remove all equipment of construction and be responsible for the safe, proper and lawful use of same and shall construct in the best and most workmanlike manner, a completed job ...; and, among other things,

to perform all work "in a skillful and workman like manner. Workmanship shall at all times be of grade accepted as the best practice of the particular trade involved ..."

50. Plaintiff City is entitled to recover against defendants for all damages caused by defendant's multiple material breaches of its contractual duties under the agreement, and is entitled to its expenses, property damages, indemnification, including the recovery of its out-of-pocket expenses totaling $125,773.24 concerning the Track Hoe's excavation and the site's excavation, cleanup, restoration and repair.

WHEREFORE, plaintiff City of Fayetteville respectfully requests that the Court grant the following relief:

1. That the plaintiff City of Fayetteville recovers against the defendants and Lane for all damages caused by their negligence as alleged herein, such damages exceeding $25,000.00.

2. That plaintiff City of Fayetteville recovers against defendant Impera for all damages caused by said defendant's breach of its contractual duties under the agreement as alleged herein and may otherwise be provided, such damages exceeding $25,000.00.

3. That plaintiff City of Fayetteville recovers against defendants for all of its damages, pre-judgment and post-judgment interest, and all costs, expenses, and fees incurred in this claim and action, including but not limited to recovery of attorney's fees as may be applicable; and

12

4.      That plaintiff City of Fayetteville be awarded all such other and further relief as the Court may deem just and proper.

This the _____ day of May, 2017.

ANDERSON, JOHNSON, LAWRENCE
& BUTLER, L.L.P.

By: _____
J. Stewart Butler, III
N.C. State Bar No. 12887
Post Office Box 53945
Fayetteville, N.C. 28305-3945
Telephone: (910) 483-1171
Facsimile:  (910) 483-5005
*Attorney for Plaintiff*

(tc:17153/Complaint)

13

# Exhibit A

# Request for Proposals

REQUEST FOR PROPOSALS

STANDARD FORM FOR CONSTRUCTION PROJECTS

*SEDIMENT BASIN PROJECT AT BRANSON CREEK (2015)*

Fayetteville, North Carolina


OWNER:

CITY OF FAYETTEVILLE
433 Hay Street
Fayetteville, North Carolina 28301


BID DUE DATE: 5:00 P.M.; THURSDAY, SEPTEMBER 17, 2015


*This document is intended for use on City of Fayetteville Construction Projects and shall not be used on any project that is not reviewed and approved by the City of Fayetteville.*

NOTICE TO BIDDERS

Pursuant to NCGS 143-131, sealed proposals will be received by the Fayetteville Public Works Commission, on behalf of the City of Fayetteville, North Carolina, until **5:00 p.m., Thursday, September 17, 2015** in the PWC Procurement Office, 1st floor, PWC Administration Building, 955 Old Wilmington Road, Fayetteville, North Carolina, at which time they will be opened for the following:

SEDIMENT BASIN PROJECT AT BRANSON CREEK (2015)

Plans and specifications, including Contract Documents, will be available electronically by request to Mark Cannady, Procurement Supervisor at mark.cannady@faypwc.com.

The City of Fayetteville reserves the right to reject any or all Proposals.

PUBLIC WORKS COMMISSION

Mark Cannady
Procurement Supervisor

## GENERAL CONTRACT PROVISIONS

1. These additional Purchase Order Provisions are supplements to the Terms and Conditions of the Purchase Order. The Contractor shall conform to the specifications as set forth in this instrument.

2. **MATERIALS, EQUIPMENT, WORKMANSHIP**

   a. The Contractor shall, unless otherwise specified, supply and pay for all labor, materials, tools, and incidentals, necessary for the completion of this work. In addition, the Contractor shall install, maintain and remove all equipment of construction and be responsible for the safe, proper and lawful use of same and shall construct in the best and most workmanlike manner, a completed job and everything incidental thereto, as shown on the plans, stated in the specifications, or reasonably implied there from, all in accordance with Industry Standard.

   b. All materials shall be new and of quality specified, except where reclaimed material is authorized herein and approved for use. Upon notice, the Contractor shall furnish evidence as to quality of materials.

   c. Whenever products, materials, or equipment are named in the specifications, the specifications shall be interpreted as to mean an item of material or equipment similar to that named and which is suited for the same use and capable of performing the same function as that named. The Contractor shall obtain written approval from the Engineer for the use of substituted products, materials or equipment claimed as equal to those specified.

   d. All work under this contract shall be performed in a skillful and workman like manner. Workmanship shall at all times be of grade accepted as the best practice of the particular trade involved, and as stipulated in written standards, laws, rules, codes or regulations of recognized organizations or institutes of the respective trades expect as exceeded or qualified by the specifications. The owner may require, at any time during the performance of this project, the removal of any workman adjudged incompetent, careless or otherwise objectionable to the Owner or Engineer. The Contractor shall immediately order such parties removed from the grounds.

3. **CODES AND STANDARDS:** Where reference is given to codes, standard specifications or other data published by regulating agencies including, but not limited to National Electrical Codes, North Carolina State Building codes, Federal specifications, ASTM Specifications, etc., it shall be understood that such reference is to the latest edition including addenda published prior to the date of the contract documents.

4. **TAXES:** North Carolina Sales Tax and Use Tax apply to materials entering into the City of Fayetteville work as applicable, and as such, costs shall be included in the bid proposal and contract sum.

5. **SALES TAX CERTIFICATE:** N/A

6. **EQUAL OPPORTUNITY CLAUSE:** The non-discrimination clause contained in Federal Executive Order 11246 and as amended by Executive Order 1375 relative to Equal Employment Opportunity for all persons without regard to race, religion, sex or national

Case 5:18-cv-00331-D   Document 1-1   Filed 07/05/18   Page 106 of 150
Complaint v Impera w contract docs Page 20

origin, and implementing rules and regulations prescribed by the Secretary of Labor are incorporated herein.

## 7. PROTECTION OF WORK, PROPERTY AND THE PUBLIC

a.  The Contractor shall be responsible for the entire site and shall provide all the necessary protections, as required by the Owner, and by laws or ordinances governing such conditions. The Contractor shall be responsible for any damage to the Owner's property or that of others on the job, by them, their personnel or their subcontractors, and shall make good such damages. The contractor shall be responsible for and pay for and pay for any claims against the Owner.

b.  The Contractor shall protect all portions of the job site(s) and building when work is not in progress, provide and set all temporary roofs covers for doorways, sash and window, and all other materials necessary to protect all the work on the building(s) or any other facilities whether by him or any of his subcontractors. Any work damaged through lack of proper protection shall be repaired or replaced with out extra cost to the Owner.

c.  No fire of any kind will be allowed on or near the jobsite without permission of the Engineer.

d.  The Contractor shall provide all necessary safety measures for the protection of all persons on the work, including the requirements of the A. G. C. The Contractor shall adhere to the rules, regulations and interpretations of the North Carolina Department of Labor relating to Occupational Safety and Health Standards for the Construction Industry (Title 20, Code of Federal Regulations, Part 1926 published in Volume 39, Number 122, Part ii, June 24, 1974, Federal Register, and revisions thereto as adopted by General Statues of North Carolina 95-126 through 155.)

## INSURANCE REQUIREMENTS

The Contractor shall not commence work under this Contract until he has obtained all insurance required under this paragraph, and such insurance has been approved by the City Attorney, nor shall the Contractor allow any subcontractor to commence work on his subcontract until all similar insurance has been so obtained and approved. See Other Provisions Section (2) (c) below titled "Subcontractors."

The insurance required for this contract is as follows:

(a)  Commercial General Liability ISO #CG 00 01 10 93: The Contractor shall take out and maintain during the life of this contract commercial general liability insurance with limits of $1,000,000 per occurrence; $2,000,000 aggregate other than products/completed operations; $2,000,000 aggregate for products/completed.

(b)  Automobile Liability ISO #CA 00 01 12 93: The Contractor shall take out and maintain during the life of this contract automobile liability insurance in an amount not less than $1,000,000 combined single limit per accident for bodily injury and property damage from owned, non-owned, and hired automobiles.

(c)  Workers' Compensation and Employers' Liability Insurance: The Contractor shall take out and maintain during the life of this contract workers' compensation insurance as required by the laws of the State of North Carolina and Employers' Liability with limits of $100,000 each

accident, $500,000 policy limit and $100,000 each employee for all employees employed on the project. In case any employee(s) engaged in work under this contract is or are not protected under the Workers' Compensation Statute, the Contractor shall provide adequate coverage for the protection of employees not otherwise protected.

## Acceptability of Insurance

All insurance policies shall be written by insurers licensed to do business in North Carolina. It is realized that certain business activities may not be readily insurable by admitted carriers. If insurance is written by non-admitted carriers whose names appear on the current listing of approved and non-admitted carriers prepared by the North Carolina Department of Insurance, such carriers will be favorably considered assuming they meet all other requirements. Non-admitted carriers should be so identified on the Certificate of Insurance form. The City reserves the right to reject any and all certificates or policies issued by insurers with a Best's rating less than A;VII.

## Indemnity Provision

Contractor assumes entire responsibility and liability for losses, expenses, demands and claims in connection with or arising out of any injury, or alleged injury (including death) to any person, or damage, or alleged damage, to property of the City of Fayetteville or others sustained or alleged to have been sustained in connection with or to have arisen out of or resulting from the negligence of the Contractor, his subcontractors, agents, and employees, in the performance of the work/service set forth in the
Standard Specifications and Special Provisions, and any changes, addenda, or modifications including losses, expenses or damages sustained by the City of Fayetteville, and agrees to indemnify and hold harmless the City of Fayetteville, its officials, employees or volunteers from any and all such losses, expenses, damages, demands and claims and agrees to defend any suit or action brought against them, or any of them, based on any such alleged injury or damage, and to pay all damages, cost and expenses in connection therewith or resulting there from. As an integral part of this agreement Contractor agrees to purchase and maintain during the life of this contract contractual liability insurance in the amount required in the general liability insurance requirements and to furnish proper evidence thereof.

## Other Provisions:

(1)     Any deductible or self-insured retention must be declared to and approved by the City.

(2)     The policies are to contain, or be endorsed to contain, the following provisions:

(a)     Commercial General Liability Coverage

1)     The City of Fayetteville, its officials, employees and volunteers are to be covered as additional insurers as respects: liability arising out of activities performed by or on behalf of the Contractor; products and completed operations of the Contractor; premises owned, leased or used by the Contractor; or automobiles owned, leased, hired or borrowed by the Contractor. The coverage shall contain no special limitations on the scope of protection afforded to the City, its officials, employees or volunteers.

2)     The Contractor's insurance coverage shall be primary insurance as respects the City, its officials, employees and volunteers. Any insurance or self-insurance maintained by the City, its officials, employees or volunteers shall be excess of Contractor's insurance and shall not contribute with it.

3)      Coverage shall state that Contractor's insurance shall apply separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the insurer's liability.

(b)      All Coverages

Each insurance policy required by this clause shall be endorsed to state that coverage shall not be suspended, voided, canceled by either party, reduced in coverage or in limits except after thirty (30) days prior written notice by certified mail, return receipt requested, has been given to:

> City of Fayetteville Purchasing Office
> P.O. Box 1089
> Fayetteville, NC 28302

Any failure to comply with reporting provisions of the policies shall not affect coverage provided to the City, its officials, employees, and volunteers. In the event the City is damaged by the failure of the Contractor to maintain such insurance and to so notify the City, the Contractor shall bear all reasonable costs properly attributable thereto.

(c)      Subcontractors

Contractor shall include all subcontractors as insurers under its policies OR shall furnish separate certificates and endorsements for each subcontractor. All coverage's for subcontractors shall be subject to all of the requirements stated herein.

(d)      No Waiver of Immunity

Any insurance coverage required by the terms of this contract shall not be deemed a contract of insurance purchased by the City nor a waiver of the City's immunity pursuant to NCGS 160A-485.

Case 5:18-cv-00331-D   Document 1-1   Filed 07/05/18   Page 109 of 150
Complaint v Impera w contract docs Page 23

SPECIAL PROVISIONS

PERFORMANCE AND DELIVERY

TITLE: Sediment Basin Project at Branson Creek (2015)

| | |
|---|---|
| Bid Receipt Date | 5:00 p.m., Thursday, September 17, 2015<br>PWC Procurement Office<br>1st Floor PWC Administration Building<br>955 Old Wilmington Road<br>Fayetteville, NC 28301 |
| Point of Contact | Mark Cannady<br>Procurement Supervisor<br>Purchasing Department<br>Finance Division<br>Fayetteville Public Works Commission<br>P.O. Box 1089<br>955 OLD Wilmington Road (28301)<br>910-223-4366 phone<br>910-483-1429 fax<br>mark.cannady@faypwc.com email |
| Date of Availability Order. | Upon Receipt of City of Fayetteville Purchase |
| Contract Time | Fourteen (14) CALENDAR DAYS from receipt of City of Fayetteville Purchase Order. |
| Liquidated Damages | $250.00 Per day for each day of overrun.<br>$250.00 Per day for each day of unauthorized suspension. |
| Bid Acceptance Period | (60 Days/unless otherwise indicated) |

The City of Fayetteville will be responsible for monitoring and maintaining the level of Mirror Lake. Prior to beginning the McBain work, Mirror Lake will be lowered to reduce the flow into the McBain location while work is being completed. Mirror Lake will be lowered no more than one (1) foot per day to a maximum of (2) feet below the normal pool elevation at the spillway. This elevation will be maintained during the course of the work.

Questions regarding this bid must be submitted in writing to the attention of Mark Cannady, Procurement Supervisor, by fax (910) 483-1429 or by e-mail to mark.cannady@faypwc.com no later than 5:00pm, Friday, September 4, 2015.

LOCATION:      Branson Creek at McBain Drive
(on McBain Dr. between McRae Dr. and Westview Dr. – see Vicinity Map)
Fayetteville, NC 28305

## 1. PROJECT DESCRIPTION:

The City of Fayetteville has a requirement to provide all supervision, labor, tools, equipment, materials and any other incidentals necessary for the removal of accumulated sediment within the basin area in Branson Creek at McBain Drive.

### Scope of Work: Branson Creek at McBain Drive

The City of Fayetteville currently maintains an in-line sediment basin located within Branson Creek. The location of the basin is on the east side of McBain Drive. The purpose of the project is to remove accumulated sediment within the basin area. Due to the unique circumstance of this sediment basin being located within the stream, the City of Fayetteville must comply with the terms and conditions of the Nationwide 3 permit from the US Army Corps of Engineers and the conditions covered by General Certification 3883 of the North Carolina Division of Water Resources. However, due to the sensitive location of the basin, the following conditions shall be complied with when removing the sediment:

1. The sediment shall be removed in low flow conditions.

2. The stream shall be blocked and secured throughout the duration of the project at the entrance of both corrugated steel pipes located underneath McBain Drive. (This is indicated as location A on the map).

3. The contractor shall by-pass pump the flow of the stream while the culverts are blocked. The culverts can be utilized to place the hose in, in order to maintain vehicular traffic through the area. Approximately 400' of hose will be needed. Any water being pumped shall be reintroduced into the stream below location B as depicted on the map. Adequate measures shall be taken to dissipate the energy and decrease the velocity of flow, in order to eliminate the potential for scouring of the stream bed and suspension of particle matter within the stream. The stream banks shall also be protected in this area.

4. Upon completion of item #2 and item #3, as much water as possible shall be allowed to flow out of the basin area. When this is finished, shoring or a turbidity curtain shall be installed at location B (refer to the attached map) to prevent sediment transport downstream.

5. Install silt fence (approximately 300 linear feet – see vicinity map for location of silt fence) along the top bank of the stream prior to excavation. This will prevent any sediment that is being removed from washing back into the stream. (See attached silt fence detail). The silt fence shall remain in place and become the property of the City of Fayetteville. The City of Fayetteville shall be responsible to remove the silt fence.

6. Once all preventative measures are in place, the removal process of sediment can commence.

7. Sediment shall be removed from the stream bottom for approximately 200'. An average of four to six feet of sediment will be removed from the basin area. The depth of the basin to be cleaned

Case 5:18-cv-00331-D   Document 1-1   Filed 07/05/18   Page 111 of 150
Complaint v Impera w contract docs Page 25

ont will be to the bottom invert of the culvert pipe. The sediment shall be stockpiled on the south side of the stream. City Staff will remove the stockpiled sediment after it is allowed to dewater. Contractor shall use extreme caution during excavation to prevent further damage to the banks of the stream. Contractor will be responsible for repairing any damage to the stream banks that takes place during the process of removing the sediment from the stream bottom.

8.  The contractor shall be responsible for maintaining the turbidity standard within the stream to a level not to exceed the maximum of 50 NTU as established by State Law. The City of Fayetteville is required by DENR's 401 Water Quality Certification to monitor the stream's turbidity level downstream of the project site to determine if the turbidity standard is being exceeded. City Staff will conduct the stream sampling and submit the results to the DENR Regional Office. There are several photographs below to give an overview of the project location.

9.  The contractor must give at least (10) day's notice to the City of Fayetteville prior to begin work.

## 2. MISCELLANEOUS INFORMATION:

1.  The contractor shall be responsible to verify all dimensions.

2.  Final cleanup and disposal of all construction debris and waste material and legally dispose of it off Owners property.

3.  Permits/Licenses/Notices – the contractor shall procure and bear the costs of all permits, licenses, fees and inspections and give all notices necessary and incidental to the due and lawful prosecution of the work.

4.  Contractor shall provide Certificate of Insurance prior to begin work. See attached requirements.

5.  Requests and Certificates for Payment – Upon "Final Acceptance" of the project by the City of Fayetteville, the contractor shall submit one invoice for total amount of project. No partial payments will be accepted.

Case 5:18-cv-00331-D   Document 1-1   Filed 07/05/18   Page 112 of 150
Complaint v Impera w contract docs Page 26

PROPOSALS SHALL BE IN THE FOLLOWING FORM:

COMPANY _____

ADDRESS _____

PHONE NUMBER: _____ FAX: _____

LICENSE: _____

| | | |
|---|---|---|
| MATERIALS | $ | _____ |
| NC Sales Tax (Materials Only) | $ | _____ |
| LABOR | $ | _____ |
| **PROJECT TOTAL** | $ | _____ |

ACKNOWLEDGMENT OF ADDENDA

Addendum  #_____  Signature_____  Date_____

Addendum  #_____  Signature_____  Date_____

Addendum  #_____  Signature_____  Date_____

Addendum  #_____  Signature_____  Date_____

Authorized Company Official: _____
                                   (Name)                                 (Title)

                                   _____
                                   (Signature)                            (Date)

Case 5:18-cv-00331-D   Document 1-1   Filed 07/05/18   Page 113 of 150
Complaint v Impera w contract docs Page 27

PROPOSALS SHALL BE IN THE FOLLOWING FORM:

COMPANY __Impera Contracting Inc.__

ADDRESS __12 E. Killegrey   Lillington NC  27546__

PHONE NUMBER: __910 - 890 - 6175__ _____ FAX: __910 - 814 - 8895__ Attn: Mike Walker

LICENSE: __Will Provide__ _____ __910 - 893 - 9529 (Home)__

EIN #: 47-4923023

| | | |
|---|---|---|
| MATERIALS | $ | _12,000.00_ |
| NC Sales Tax (Materials Only) | $ | _960.00_ |
| LABOR | $ | _8,720.00_ |
| PROJECT TOTAL | $ | _21,574.40_ |

ACKNOWLEDGMENT OF ADDENDA

Addendum # _____  Signature_____  Date_____

Addendum # _____  Signature_____  Date_____

Addendum # _____  Signature_____  Date_____

Addendum # _____  Signature_____  Date_____

Authorized Company Official: __Michael M. Walker__ _____ __Owner__
                                   (Name)                           (Title)

                              __Mike Walker__ _____ __9-17-15__
                                   (Signature)                       (Date)

# Exhibit C

# City of Fayetteville's Acceptance

INVOICE TO:
FINANCE DEPARTMENT
P.O. DRAWER D
FAYETTEVILLE, N.C. 28302
(910) 433-1600

# CITY OF FAYETTEVILLE
### PURCHASING OFFICE
### 9110 OLD WILMINGTON ROAD
### FAYETTEVILLE, NC 28301
### (910)-223-4307
### (FAX) 910-433-1200

## PURCHASE ORDER NO.

### 18-360 - GP

Page

Date   7-30-18

PURCHASE ORDER NUMBER MUST BE ON
ALL SHIPMENTS AND COPIES OF INVOICE.

ORDERED FROM: Impera Constructing, Inc.
Dr. F. Killebrew
PO Box 600 NC 27846

SHIP TO: City of Fayetteville
Eng. & Infrastructure/Construction
339 Alexander Street
Fayetteville, NC 28301

| *** REQUEST FOR QUOTE *** | | | | BUYER: Todd, Kimberly | |
| DELIVER BY | FOB/SHIPPING TERMS | PAYMENT TERMS | | DEPARTMENT/DIVISION | |
| 08/30/18 | Services | NET 30 | | STORMWATER MANAGEMENT | |

THIS ORDER ISSUED SUBJECT TO THE TERMS AND CONDITIONS ON THE REVERSE HEREOF.

| QUANTITY | UNIT | DESCRIPTION | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|
| 1.0 | | CLEMENT BASIN PROJECT | .0000 | $1,974.18 |
| | | #7824, B-90 | | |
| | | AT BRANSON CREEK (GROUP) | | |
| | | TO INCLUDE MATERIALS AND LABOR. | | |
| | | | | |
| | | PER CITY OF FAYETTEVILLE SPECIFICATIONS | | |
| | | AND BID DATED SEPTEMBER 17, 2017 | | |
| | | | | |
| | | *INSURANCE CERTIFICATE SHALL | | |
| | | BE PROVIDED BY THE CONTRACTOR | | |
| | | BEFORE WORK WILL COMMENCE.* | | |
| | | | | |
| | | SUB TOTAL | | $1,974.18 |
| | | SALES TAX | | |
| | | TOTAL PURCHASE ORDER | | $1,974.18 |

THIS DOCUMENT IS A REPRESENTATION OF THE ENCUMBRANCE
BY THE LOCAL GOVERNMENT BUDGET AND FISCAL CONTROL ACT.

AUTHORIZED SIGNATURE

PURCHASING COPY

NORTH CAROLINA

CUMBERLAND COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 17 CVS 3615

CITY OF FAYETTEVILLE,

Plaintiff,

vs.

IMPERA CONTRACTING, INC and
CHRISTOPHER LANE DAVIS,

Defendants.

)
)
)
)
)
)
)
)
)
)
)

MOTION FOR ENTRY OF DEFAULT

Plaintiff moves the Court pursuant to Rule 55 of the Rules of Civil Procedure for entry of default by Defendants Impera Contracting, Inc. and Christopher Lane Davis, and Plaintiff respectfully shows the Court that Defendants have failed to plead or is otherwise subject to default as provided by the Rules of Civil Procedure as shown by the Affidavit attached hereto.

This the 22 day of August, 2017.

ANDERSON, JOHNSON, LAWRENCE
& BUTLER, L.L.P.

By: _____
J. Stewart Butler, III
N.C. State Bar No. 12887
Post Office Box 53945
Fayetteville, N.C. 28305-3945
Telephone: (910) 483-1171
Facsimile: (910) 483-5005
*Attorney for Plaintiff*

ANDERSON, JOHNSON,
LAWRENCE & BUTLER,
L.L.P.
P.O. BOX 53945
FAYETTEVILLE, NC
28305
(910) 483-1171

NORTH CAROLINA

CUMBERLAND COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 17 CVS 3615

CITY OF FAYETTEVILLE,

Plaintiff,

vs.

IMPERA CONTRACTING, INC and
CHRISTOPHER LANE DAVIS,

Defendants.

)
)
)
)
)
)
)
)
)
)
)

AFFIDAVIT

J. Stewart Butler, III, being first duly sworn, deposes and says:

1. Plaintiff is a municipal entity located in Cumberland County, North Carolina.

2. Plaintiff is informed and believes that Defendant Impera Contracting, Inc. is a corporation incorporated under the laws of the State of North Carolina, with its principal place of with its business being in Lillington, North Carolina, as reflected by the address at which it was served, which is identified in the Return of Service contained in the Court file.

3. Plaintiff is informed and believes that Defendant Christopher Lane Davis is a citizen and resident of Wake County, North Carolina, as reflected by the address at which he was served, which is identified in the Affidavit of Service contained in the Court file.

4. This action was instituted in this Court on May 12, 2017, said court being a court of this State having jurisdiction over the subject matter and parties of the action.

5. Defendant Impera Contracting, Inc. was served with process pursuant to Rule 4 of the Rules of Civil Procedure by Sheriff.

6. Defendant Christopher Lane Davis was served with process pursuant to Rule 4 of the Rules of Civil Procedure by Certified Mail with Return Receipt.

ANDERSON, JOHNSON,
LAWRENCE & BUTLER
L.L.P.
PO BOX 88645
FAYETTEVILLE, NC
28306
(910) 483-1171

5.   The time for filing answer or pleading by Defendants Impera Contracting, Inc. and Christopher Lane Davis has expired and no answer or other pleading have been filed by Defendants, and Defendants have not otherwise appeared to defend this action.

This the 22 day of August, 2017

                                        ANDERSON, JOHNSON, LAWRENCE
                                        & BUTLER, L.L.P.

                                        By:_____
                                            J. Stewart Butler, III
                                            N.C. State Bar No. 12887
                                        Post Office Box 53945
                                        Fayetteville, N.C. 28305-3945
                                        Telephone: (910) 483-1171
                                        Facsimile:  (910) 483-5005
                                        *Attorney for Plaintiff*

SWORN TO AND SUBSCRIBED BEFORE ME

this 22 day of August, 2017.

_____
(Notary Public's Signature)

Tina J. Critzer, Notary Public
(Notary's Printed Name)

My Commission expires: 10/22/18

(tc:17153/AffidavitEntryDefault)

2

The undersigned hereby certifies that a copy of the foregoing *Motion for Entry of Default* was this day served upon the below-named counsel by mailing a copy of each of such instrument(s), postage prepaid, first class mail, to the office address of:

> Impera Contracting, Inc.
> By and through its Registered Agent,
> Michael M. Walker
> 12 E. Killiegrey Street
> Lillington, North Carolina 27546
> *Defendant Pro Se*
>
> Christopher Lane Davis
> 2021 Buck Rowland Road
> Fuquay Varina, North Carolina 27526
> *Defendant Pro Se*

This the 22 day of August, 2017.

ANDERSON, JOHNSON, LAWRENCE
& BUTLER, L.L.P.

By:

J. Stewart Butler, III
N.C. State Bar No. 12887
Post Office Box 53945
Fayetteville, N.C. 28305-3945
Telephone: (910) 483-1171
Facsimile: (910) 483-5005
*Attorney for Plaintiff*

(tc:17153/MotionEntryDefault)

2

NORTH CAROLINA

CUMBERLAND COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 17 CVS 3615

CITY OF FAYETTEVILLE,

Plaintiff,

vs.

IMPERA CONTRACTING, INC and
CHRISTOPHER LANE DAVIS,

Defendants.

)
)
)
)
)
)
)
)
)
)
)

ENTRY OF DEFAULT

It appearing that the Defendants, Impera Contracting, Inc. and Christopher Lane Davis are in default for failure to plead or otherwise defend as required by law;

Default is hereby entered as against said Defendants.

This the 22 day of August, 2017.

Clerk of Superior Court
assistant

*J. Stewart Butler, III, Esq.*
N.C. State Bar No. 12887
Anderson, Johnson, Lawrence
& Butler, LLP
P.O. Box 53945
Fayetteville, NC 28305
*Attorney for Plaintiff*

(tc:17153/EntryDefault)

**LITTLE & LITTLE, PLLC**
ATTORNEYS AT LAW
POST OFFICE BOX 20789
RALEIGH, NORTH CAROLINA 27619-0789

TELEPHONE: (919) 856-0006
FACSIMILE: (919) 856-0086

\* CATHRYN M. LITTLE
WILLIAM B. L. LITTLE

\* ALSO LICENSED IN VIRGINIA, FLORIDA
and the DISTRICT OF COLUMBIA

9/13/16

VIA U.S. MAIL AND CERTIFIED MAIL, RETURN RECEIPT REQUESTED TO:

Impera Contracting, Inc.
Mr. Michael M. Walker
12 E. Killigrey Street
Lillington, NC 27546

Re:  NCLM File:      515–75737
     Your File:      2020772-1
     Claimant:       City of Fayetteville
     Defendants:     Impera Contracting, Inc., and Michael M. Walker
     Date of loss:   10/24/15
     Type of loss:   Expenses for excavation of equipment, clean up expenses,
                     and repair/restoration of damaged property

Dear Mr. Walker and Impera Contracting, Inc.:

I have been retained by the North Carolina League of Municipalities as the Third-Party Claims Administrator for the City of Fayetteville. As you know, you submitted a winning bid in response to the City's Request for Proposals for the Sediment Basin Project at Branson Creek. Among other relevant and material contractual provisions under which you are legally bound to the City, the Request for Proposals under which you submitted and won your bid for the Sediment Basin Project at Branson Creek includes the following binding General Contract Provisions:

7. PROTECTION OF WORK, PROPERTY AND THE PUBLIC

   a. *The Contractor shall be responsible for the entire site and shall provide all the necessary protections, as required by the Owner, and by laws or ordinances governing such conditions. **The Contractor shall be responsible for any damage to the Owner's property** or that of others on the job, by them, their personnel or their subcontractors, **and shall make good such damages.** The* contractor shall be responsible for and pay for and pay for (sic.) any claims against the Owner.

b. The Contractor shall protect all portions of the job site(s) and building when
work is not in progress, provide and set all temporary roofs covers for
doorways, sash and window, and all other materials necessary to protect all
the work on the building(s) or any other facilities whether by him or any of his
subcontractors. *Any work damaged through lack of proper protection
shall be repaired or replaced without extra cost to the Owner.*

(Page 3 of 10, Request for Proposals for Sediment Basin Project)(2015)

Your Contract with the City specifically sets out the following Insurance Requirements:

The Contractor shall not commence work under this Contract until he has
obtained all insurance required under this paragraph, and such insurance has
been approved by the City Attorney, nor shall the Contractor allow any
subcontractor to commence work on his subcontract until all similar insurance
has been so obtained and approved. . . .

The insurance required for this contract is as follows:

(a) Commercial General Liability ISO #CG 00 01 10 93: The Contractor
shall take out and maintain during the life of this contract commercial
general liability insurance with limits of $1,000,000 per occurrence; ...

(Page 3 of 10, Request for Proposals for Sediment Basin Project)(2015)

The Contract sets out very clear requirements under the following Indemnity Provision:

*Contractor assumes entire responsibility and liability for losses, expenses,
demands and claims in connection with or arising out of any . . . damage, or
alleged damage, to property of the City of Fayetteville or others sustained or
alleged to have been sustained in connection with or to have arisen out of or
resulting from the negligence of the Contractor, his subcontractors,
agents, and employees, in the performance of the work/service set forth in the
Standard Specifications and Special Provisions, and any changes, addenda, or
modifications including losses, expenses or damages sustained by the City of
Fayetteville, and agrees to indemnify and hold harmless the City of
Fayetteville, its officials, employees or volunteers from any and all such losses,
expenses, damages, demands and claims and agrees to defend any suit or
action brought against them, or any of them, based on any such alleged injury or
damage, and to pay all damages, cost and expenses in connection therewith or
resulting there from. As an integral part of this agreement Contractor agrees
to purchase and maintain during the life of this contract contractual liability
insurance in the amount required in the general liability insurance
requirements and to furnish proper evidence thereof.*

(Page 4 of 10, Request for Proposals for Sediment Basin Project)(2015)

We recently received a coverage denial letter from Kim Saxon as a Senior Adjuster for Maitland Claims for Amtrust North America. By email dated 8/31/16, Ms. Saxon advised that they are handling this claim on your behalf, and on behalf of your commercial liability insurer, Security National Insurance Company. According to Ms. Saxon's email, they "have determined that there is no coverage for the damages" claimed by the City of Fayetteville "under Impera's policy" and they "will not issue any payments for this loss."

Please be advised that you owe direct contractual obligations to the City which are not diminished or changed in any respect by any reported lack of liability coverage for your contractual obligations owed to the City. Regardless of whether or not you have liability coverage for your legal obligations assumed under your contract with the City for the Sediment Basin Project at Branson Creek, you remain contractually liable to the City under the contractual provisions highlighted in bold italics above, as well as other terms outlined in the City's Request for Proposals for the Sediment Basin Project.

As of this date, the City's out of pocket damages include the following, plus accrued interest and attorneys' fees incurred to date:

   $ 94,996.50 for Towing Recovery Activities by Phillip's Towing
   $ 12,308.74 for construction of sewer by-pass by Xylem Dewatering Solutions
   $ 18,468.00 for restoration of damaged land and creek area by Phillip's Towing
   $125,773.24

The City hereby demands that you make full payment of $125,773.24 within 20 days of the date of this letter for all amounts contractually owed to the City, so that the City will not be forced to file a lawsuit against you.

If you fail to make full payment within 20 days of the date of this letter, thus forcing the City to file a lawsuit against you, the City will seek recovery for all of its attorneys' fees and all legal expenses relating to this claim and any resulting litigation.

Please govern yourself accordingly.

           Very truly yours,


           Cathryn M. Little

cc:
Ms. Kim Saxon, Senior Adjuster, Maitland Claims, Amtrust North America
Ms. Charlotte P. Martin, Property and Liability Adjuster,
     North Carolina League of Municipalities

...pera Contracting, Inc. and Mr. Michael M. Walker
9/13/18
Page 4

Envelopes:

Impera Contracting, Inc.
Mr. Michael M. Walker
12 E. Killigrey Street
Lillington, NC 27546

Impera Contracting, Inc.
Mr. Michael M. Walker
12 E. Killigrey Street
Lillington, NC 27546

Impera Contracting, Inc.
Mr. Michael M. Walker
12 E. Killigrey Street
Lillington, NC 27546

Impera Contracting, Inc.
Mr. Michael M. Walker
12 E. Killigrey Street
Lillington, NC 27546

Ms. Kim Saxon
Senior Adjuster, Maitland Claims
Amtrust North America
P.O. Box 94574
Cleveland, OH 44101

Ms. Charlotte Martin
Property & Liability Adjuster
North Carolina League of Municipalities
308 W. Jones Street
Raleigh NC 27603

# LITTLE & LITTLE, PLLC
ATTORNEYS AT LAW
POST OFFICE BOX 20789
RALEIGH, NORTH CAROLINA 27619-0789

TELEPHONE: (919) 856-0006
FACSIMILE: (919) 856-0086

* CATHRYN M. LITTLE
WILLIAM B. L. LITTLE

* ALSO LICENSED IN VIRGINIA, FLORIDA
and the DISTRICT OF COLUMBIA

11/10/16

VIA U.S. MAIL AND CERTIFIED MAIL, RETURN RECEIPT REQUESTED TO:

Impera Contracting, Inc.
Mr. Michael M. Walker
12 E. Killigrey Street
Lillington, NC 27546

| Re: | NCLM File: | 515–75737 |
|-----|-----------|-----------|
| | Your File: | 2020772-1 |
| | Claimant: | City of Fayetteville |
| | Defendants: | Impera Contracting, Inc., and Michael M. Walker |
| | Date of loss: | 10/24/15 |
| | Type of loss: | Expenses for excavation of equipment, clean up expenses, and repair/restoration of damaged property |
| | Our File: | 500-1238 |

Dear Mr. Walker and Impera Contracting, Inc.:

This is to follow up on my demand letter to you dated 9/15/16, which you received by certified mail on 9/17/16. We are trying to work with you in good faith to resolve this issue, but in bad faith you have failed to respond in any way to my letter dated 9/15/16.

As advised in my demand letter to you dated 9/15/16, I have been retained by the North Carolina League of Municipalities as the Third-Party Claims Administrator for the City of Fayetteville. You submitted a winning bid in response to the City's Request for Proposals for the Sediment Basin Project at Branson Creek.

Among other relevant and material contractual provisions under which you are legally bound to the City, the Request for Proposals under which you submitted and won your bid for the Sediment Basin Project at Branson Creek includes the following binding General Contract Provisions:

## 7. PROTECTION OF WORK, PROPERTY AND THE PUBLIC

a. *The Contractor shall be responsible for the entire site and shall provide all the necessary protections, as required by the Owner, and by laws or ordinances governing such conditions. The Contractor shall be responsible for any damage to the Owner's property or that of others on the job, by them, their personnel or their subcontractors, and shall make good such damages.* The contractor shall be responsible for and pay for and pay for (sic.) any claims against the Owner.

b. The Contractor shall protect all portions of the job site(s) and building when work is not in progress, provide and set all temporary roofs covers for doorways, sash and window, and all other materials necessary to protect all the work on the building(s) or any other facilities whether by him or any of his subcontractors. *Any work damaged through lack of proper protection shall be repaired or replaced without extra cost to the Owner.*

(Page 3 of 10, Request for Proposals for Sediment Basin Project)(2015)

Your Contract with the City specifically sets out the following Insurance Requirements:

> *The Contractor shall not commence work under this Contract until he has obtained all insurance required under this paragraph,* and such insurance has been approved by the City Attorney, nor shall the Contractor allow any subcontractor to commence work on his subcontract until all similar insurance has been so obtained and approved. . . .

> The insurance required for this contract is as follows:

> (a) Commercial General Liability ISO #CG 00 01 10 93: The Contractor shall take out and maintain during the life of this contract commercial general liability insurance with limits of $1,000,000 per occurrence; ...

(Page 3 of 10, Request for Proposals for Sediment Basin Project)(2015)

The Contract sets out very clear requirements under the following Indemnity Provision:

> *Contractor assumes entire responsibility and liability for losses, expenses, demands and claims in connection with or arising out of any . . . damage,* or alleged damage, *to property of the City of Fayetteville* or others sustained or alleged to have been sustained *in connection with or to have arisen out of or resulting from the negligence of the Contractor, his subcontractors, agents, and employees,* in the performance of the work/service set forth in the Standard Specifications and Special Provisions, and any changes, addenda, or

modifications including losses, expenses or damages sustained by the City of Fayetteville, *and agrees to indemnify and hold harmless the City of Fayetteville*, its officials, employees or volunteers from any and all such losses, expenses, damages, demands and claims and agrees to defend any suit or action brought against them, or any of them, based on any such alleged injury or damage, and to pay all damages, cost and expenses in connection therewith or resulting there from. *As an integral part of this agreement Contractor agrees to purchase and maintain during the life of this contract contractual liability insurance in the amount required in the general liability insurance requirements and to furnish proper evidence thereof.*

(Page 4 of 10, Request for Proposals for Sediment Basin Project)(2015)

We have received a coverage denial letter from Kim Saxon as a Senior Adjuster for Maitland Claims for Amtrust North America. By email dated 8/31/16, Ms. Saxon advised that they are handling this claim on your behalf, and on behalf of your commercial liability insurer, Security National Insurance Company. According to Ms. Saxon's email, they "have determined that there is no coverage for the damages" claimed by the City of Fayetteville "under Impera's policy" and they "will not issue any payments for this loss."

*Please be advised that you owe direct contractual obligations to the City which are not diminished or changed in any respect by any reported lack of liability coverage for your contractual obligations owed to the City.* Regardless of whether you have liability coverage for legal obligations assumed under your contract with the City for the Sediment Basin Project at Branson Creek, you remain contractually liable to the City under the contractual provisions highlighted in bold italics above, and under other terms outlined in the City's Request for Proposals for the Sediment Basin Project.

As shown by the attached documentation, the City has paid the following out-of-pocket expenses, plus accrued interest and attorneys' fees incurred to date:

$ 94,996.50 for Towing Recovery Activities by Phillip's Towing
$ 12,308.74 for construction of sewer by-pass by Xylem Dewatering Solutions
$ 2,789.34 for expenses incurred by the City Public Works Commission to repair and
$110,094.58 restore the damaged land and creek area at McBain Drive

The City hereby demands that you make full payment of **$110,094.58**, plus interest accrued as of the date of payment, within *10 days* of the date of this letter for all amounts that you contractually owe to the City, so that the City will not be forced to file a lawsuit against you.

If you fail to make full payment, plus accrued interest, within *10 days* of the date of this letter, the City will be forced to file a lawsuit against you. Since you have failed to work with the City in good faith, the City will seek recovery against you for all of its attorneys' fees and all legal expenses relating to this claim and resulting litigation.

Impera Contracting, Inc. and Mr. Michael M. Walker
11/10/16
Page 4


Please govern yourself accordingly.


                              Very truly yours,


                              Cathryn M. Little

cc:
Ms. Kim Saxon, Senior Adjuster, Maitland Claims, Amtrust North America
Ms. Charlotte P. Martin, Property and Liability Adjuster,
          North Carolina League of Municipalities

Envelopes:

Impera Contracting, Inc.
Mr. Michael M. Walker
12 E. Killigrey Street
Lillington, NC  27546

Impera Contracting, Inc.
Mr. Michael M. Walker
12 E. Killigrey Street
Lillington, NC  27546

Impera Contracting, Inc.
Mr. Michael M. Walker
12 E. Killigrey Street
Lillington, NC  27546

Impera Contracting, Inc.
Mr. Michael M. Walker
12 E. Killigrey Street
Lillington, NC  27546

Ms. Kim Saxon
Senior Adjuster, Maitland Claims
Amtrust North America
P.O. Box 94574
Cleveland, OH 44101

Ms. Charlotte Martin
Property & Liability Adjuster
North Carolina League of Municipalities
308 W. Jones Street
Raleigh NC 27603



**AmTrust North America**

An AmTrust Financial Company

February 27, 2017

VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED
AND REGULAR MAIL

7016 2140 0000 8925 9505
Cathryn Little
Little & Little, PLLC
P.O. Box 20789
Raleigh, NC 27619-0789

Re:   Insurance Company:    Security National Insurance Company
     Our File No.:           2020772-1
     Policyholder:          Michael M. Walker DBA: Impera Contracting
     Policy No.:            NA113405400
     Effective Dates:       September 3, 2015 to September 3, 2016
     Claimant:            The City of Fayetteville
     Date of Loss:         October 27, 2015
     Loss Location:        Crossroads of McRae and Westview, Fayetteville, North Carolina

Dear Ms. Little:

We are the liability insurer for Michael M. Walker DBA: Impera Contracting ("Impera") and received your demand for payment of $110,094.58 and demand for insurance coverage for The City of Fayetteville ("City") under Impera's policy in connection with the above-captioned matter. Please be advised that we determined that no coverage is available for City for this matter under Impera's policy for the reason set forth below.

On or about October 24, 2015, while Impera was using a rented Kobelco excavator ("excavator") as part of a project they were performing for the City involving the removal of sediment from the Branson Creek basin, a sinkhole developed, ensnaring the Kobelco excavator in the sinkhole. This work was being performed at or near the crossroads of McRae and Westview, in Fayetteville, North Carolina. Impera had been working in the creek basin on this project for three days, but on this date, the excavator "all but fell out of sight" due to the instantaneous formation of a sinkhole in the basin.

Post Office Box 94574 Cleveland, OH 44101   FLmail@amtrustgroup.com   Fax: 561-962-0620

First, we refer you to policy form CG 00 01 12 07, at Section I – Coverages, Coverage A Bodily Injury and Property Damage Liability, paragraph 1 and Coverage B Personal and Advertising Injury Liability, paragraph 1, which state in relevant part:

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

   \*              \*              \*

   b. This insurance applies to "bodily injury" and "property damage" only if:
      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   \*              \*              \*

### COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

   \*              \*              \*

We further refer you to policy form 49-0108 07 11, which states:

### BLANKET ADDITIONAL INSUREDS –
### OWNERS, LESSEES OR CONTRACTORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

| Policy        Number: NA113405400 | Endorsement Effective: 09/03/2015 |
|---|---|
| Name Insured Michael Walker Impera Contracting | Authorized Representative: |

SCHEDULE

| Name of Person or Organization: |
|---|
| Any person or organization that the named Insured is obligated by virtue of a written contract or agreement to provide insurance such as is afforded by this policy. |
| Location: |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A. Section II – Who Is An Insured is amended to include as an insured the person or organization shown in the Schedule, but only to the extent that the person or organization shown in the Schedule is held liable for your acts or omissions arising out of your ongoing operations performed for that insured.

B. With respect to the insurance afforded to these additional insured(s), the following exclusion is added:

2. Exclusions

This insurance does not apply to "bodily injury" or "property damage" occurring after:

(1) All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

(2) That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

C. The words "you" and "your" refer to the Named Insured shown in the Declarations.

D. "Your work" means work or operations performed by you or on your behalf; and materials, parts or equipment furnished in connection with such work or operations.

Primary Wording

If required by written contract or agreement: Such insurance as is afforded by this policy shall be primary insurance, and any insurance or self-insurance maintained by the above additional insured(s) shall be excess of the insurance afforded to the name insured and shall not contribute to it.

Waiver of Subrogation

If required by written contract or agreement: We waive any right of recovery we may have against an entity that is an additional insured per the terms of this endorsement because of payments we make for injury or damage arising out of "your work" done under a contract with that person or organization.

"Your work" is defined in policy form CG 00 01 12 07 as follows:

"Your work":
  a. Means:
    (1) Work or operations performed by you or on your behalf; and
    (2) Materials, parts or equipment furnished in connection with such work or operations.
  b. Includes
    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
    (2) The providing of or failure to provide warnings or instructions

City is not listed on the policy as a named insured or as an additional insured and therefore does not qualify as a named insured or an additional insured under the policy.

Furthermore, although there is an additional insured endorsement on the policy, it requires that there be in place a contract between the named insured and the party seeking additional insured status, and that this contract obligate the named insured to provide additional insured coverage. To date, we have not been provided with a contract between Impera and City that would obligate Impera to provide this coverage to City.

In addition, in this matter, you are seeking reimbursement for costs City has incurred for this loss under Impera's policy citing additional insured status. The policy issued to Impera is a general liability policy that provides coverage for losses asserted against insureds by third parties.

Per the above-cited provision of the policy, the carrier "will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. As such, even if City qualifies as an additional insured, we would only pay the sums that City would be legally obligated to pay a third party, not sums that City is looking to be paid as reimbursement for costs it has incurred.

Lastly, in regards to your request for Impera to issue payment to City in the amount of $110,094.58, please be advised that we have completed a good faith investigation into the details surrounding this loss. Our investigation has determined that there is no negligence on behalf of our insured in relation to this matter. It is our

position that you have failed the burden of proving our insured is legally liable for City's alleged injuries and damages. After a careful evaluation of the above facts, we are denying liability for this loss for any alleged injuries on behalf of our insured. Therefore, we must respectfully decline any payment for any damages.

In the event there is a determination that Impera is liable for the damages sustained by City, be advised that Impera's policy contains various exclusions and endorsements that preclude coverage for this matter. Accordingly, we will not make any indemnity payments in connection with this matter.

This letter does not constitute a waiver of any policy provisions or defenses available to us, as we reserve the right to analyze further the coverage provided by this policy and any exclusions thereto.

If any of the factual information relied upon by us in the letter is inaccurate in any way, please advise us immediately in writing.

Very truly yours,

Harry Keith
Claims Supervisor
407-754-0364 Ph.
561-962-0602 Fax

HK:es

cc:    Michael M. Walker
       dba: Impera Contracting
       12 East Killegrey Street
       Lillington, NC 27546

       Builders & Tradesman's Ins Svc
       6610 Sierra College Blvd.
       Rocklin, CA 95677

       Olde Fayetteville Ins. & Financial Services, Inc.
       201 Hay Street, Suite 301
       Fayetteville, NC 28301

NORTH CAROLINA

CUMBERLAND COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 17 CVS 3615

CITY OF FAYETTEVILLE, ~~2017 OCT -2 A 10 27~~

Plaintiff, ~~CUMBERLAND CO., C.S.C.~~

vs.                    BY_____

IMPERA CONTRACTING, INC. and
CHRISTOPHER LANE DAVIS,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

**DEFAULT JUDGMENT**

THIS MATTER coming on to be heard before the undersigned Judge on Motion of the plaintiff, City of Fayetteville, for entry of Default Judgment against the defendants, Impera Contracting, Inc. and Christopher Lane Davis, jointly and severally, the Defendants, having been served notice of the hearing on this Motion, and the Defendants not appearing in Court, the Court having reviewed all pleadings, motions and affidavits, and having heard from Plaintiff's counsel, J. Stewart Butler, III, does hereby award the Plaintiff default judgment, jointly and severally, against both Defendants in the amount of $125,773.24

SO ORDERED this the *2d* day of *October* 2017.

_____
The Honorable *GALE ADAMS*
Judge of the Superior Court Presiding

J. Stewart Butler, III
N.C. State Bar No. 12887
P. O. Box 53945
Fayetteville, N.C. 28305
Telephone: (910) 483-1171
*Attorney for Plaintiff*

(drn:17153/OrdDefaultJudg)

April 17, 2018

Keith H. Johnson
*Partner*
D: 919.783.1013
F: 919.783.1075
kjohnson@poynerspruill.com

**VIA CERTIFIED MAIL,
RETURN RECEIPT REQUESTED**

Harry Keith
Claims Supervisor
AmTrust North America
P.O. Box 94574
Cleveland, OH 44101

RE:   Insurance Company:  Security National Insurance Company
      File No.:            2020772-1
      Policyholder:        Michael M. Walker DBA: Impera Contracting
      Policy No.:          NA113405400
      Effective Dates:     September 3, 2015 to September 3, 2016
      Claimant:            The City of Fayetteville
      Date of Loss:        October 27, 2015
      Loss Location:       Crossroads of McRae and Westview, Fayetteville, North Carolina

Dear Mr. Keith:

This firm represents the City of Fayetteville (the "City") regarding the above-referenced matter.
Our file shows the last correspondence from you was dated February 27, 2017, denying that
Security National Insurance Company ("Security National") had any liability to reimburse the
City for its damages.

Since then, in May 2017, the City filed a civil action against the insured, Michael Walker, d/b/a
Impera Contracting, in part asserting claims of negligence.  A copy of the Complaint is enclosed.
On October 2, 2017, a default judgment was entered in the civil action in favor of the City, in the
amount of $125,773.24.  A copy of that default judgment is also enclosed.

That judgment establishes as a matter of law that the damages sustained by the City were
proximately caused by the negligence of Impera Contracting, the insured.  It also establishes the
amount of those damages.

Security National is obligated to indemnify Impera Contracting for such losses under the policy.
In light of the above-referenced judgment, the City now has a direct claim against Security
National.

PoynerSpruill

The City demands that Security National finally meet its obligations by reimbursing the City for the $125,773.24 in damages sustained, minus the applicable $500 deductible under the policy. In exchange, the City is prepared to execute an appropriate release in favor of Security National.

Unless such an arrangement is entered into by May 1, 2018, the City will pursue all available remedies against Security National, for its refusal to pay this justifiable claim.

With kind regards, I am

Yours truly,

Keith H. Johnson

KHJ:cl
Enclosures

cc:    Alicia Young, Esq., Asst. City Attorney, City of Fayetteville (w/o encl.'s)

STATE OF NORTH CAROLINA

CUMBERLAND COUNTY

FILED

2018 JUN 20 A 8: 36

CUMBERLAND CO., C.S.C.

BY _____

GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18-CVS-4031

CITY OF FAYETTEVILLE,

Plaintiff,

vs.

SECURITY NATIONAL INSURANCE
COMPANY,

Defendant.

**AFFIDAVIT OF SERVICE**

Keith H. Johnson, being duly sworn, deposes and says:

1.      I have personal knowledge of, and am competent to testify about, the matters set forth below.

2.      On June 4, 2018, the summons and complaint directed to the defendant, Security National Insurance Company, were deposited with the United States Post Office for mailing and delivery by certified mail to Security National Insurance Company, c/o Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

3.      The summons and complaint were received by Security National Insurance Company on June 8, 2018, as evidenced by the certified mail receipt and online confirmation attached as Exhibit A.

Further Affiant Sayeth Not.

Respectfully submitted, this the 18th day of June, 2018.

_Keith H. Johnson_

_____
Keith H. Johnson

STATE OF NORTH CAROLINA

COUNTY OF WAKE

Sworn to and subscribed before me
this _____ day of June, 2018.

_____
Notary Public

Printed Name: _____

My Commission Expires: _____

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing by depositing copies thereof in envelopes bearing sufficient postage in the United States mail, addressed to the following persons at the following addresses which are the last addresses known to me:

> Security National Insurance Company
> c/o Corporate Service Company
> 251 Little Falls Drive
> Wilmington, Delaware 19808

This the 18th day of June, 2018.

POYNER SPRUILL LLP

By: _____

Keith H. Johnson

ConfirmDelivery.com

## Mail Piece Details

 **Print this page**

### Recipient Address

SECURITY NATIONAL INSURANCE COMPANY
C/O CORPORATION SERVICE COMPANY
251 LITTLE FALLS DR
WILMINGTON, DE 19808-1674

*Record / Case Number:*
010172.00075000

### Return Address

KEITH H. JOHNSON
POYNER SPRUILL
PO BOX 1801
RALEIGH, NC 27602-1801

### Mail Piece Information

| | |
|---|---|
| Tracking Number: | 9214890106615400012421180 |
| Date Created: | 06/04/2018 01:22:01 PM |
| Mail Class: | USPS First Class Mail |
| Special Services: | Certified Mail |
| | Return Receipt Electronic |
| Memo: | -- |
| Created By: | Melissa T Hill - Poyner Spruill |

### Signature Information

Signed For By: W LOLLY
Signature Status: Available (Click Here) | Re-Request Signature (Click Here)

Having issues viewing the signature file?
Make sure you are using the latest version of Adobe Acrobat Reader

### Tracking Information

Mailed, June 04, 2018, 01:22:01 PM, RALEIGH,NC 27602
Pre-Shipment Info Sent To Usps, Usps Awaiting Item, June 04, 2018, 12:00:00 AM
Pre-Shipment Info Sent Usps Awaits Item, June 04, 2018, 12:25:00 PM, RALEIGH,NC 27602
Accepted At Usps Origin Facility, June 06, 2018, 08:19:00 AM, RALEIGH,NC 27602
Origin Acceptance, June 06, 2018, 08:19:00 AM, RALEIGH,NC 27602
Arrived At Usps Regional Origin Facility, June 06, 2018, 09:34:00 AM
Processed Through Usps Facility, June 06, 2018, 09:34:00 AM, RALEIGH,NC 27676
Depart Usps Facility, June 06, 2018, 08:32:00 PM, RALEIGH,NC 27676
Departed Usps Regional Origin Facility, June 06, 2018, 09:46:00 PM
Processed Through Usps Facility, June 06, 2018, 09:46:00 PM, RALEIGH,NC 27676
Departed Usps Regional Facility, June 07, 2018, 09:08:00 AM
Depart Usps Facility, June 07, 2018, 09:08:00 AM, RALEIGH,NC 27676
Arrived At Usps Regional Facility, June 07, 2018, 06:10:00 PM
Arrive Usps Facility, June 07, 2018, 06:10:00 PM, PHILADELPHIA,PA 19116
Depart Usps Facility, June 07, 2018, 07:19:00 PM, PHILADELPHIA,PA 19116
Departed Usps Regional Facility, June 07, 2018, 08:46:00 PM
Depart Usps Facility, June 07, 2018, 08:46:00 PM, PHILADELPHIA,PA 19116
Arrived At Usps Regional Facility, June 07, 2018, 10:32:00 PM
Arrive Usps Facility, June 07, 2018, 10:32:00 PM, WILMINGTON,DE 19850
Arrive Usps Facility, June 07, 2018, 10:56:00 PM, WILMINGTON,DE 19850
Processed Through Usps Facility, June 08, 2018, 02:25:00 AM, WILMINGTON,DE 19850
Processed Through Usps Facility, June 08, 2018, 02:26:00 AM, WILMINGTON,DE 19850
Departed Usps Regional Facility, June 08, 2018, 04:41:00 AM
Depart Usps Facility, June 08, 2018, 04:41:00 AM, WILMINGTON,DE 19850
Arrived At Usps Facility, June 08, 2018, 04:49:00 AM, WILMINGTON,DE 19808
Arrive Usps Facility, June 08, 2018, 04:49:00 AM, WILMINGTON,DE 19808
Arrival At Unit, June 08, 2018, 06:06:00 AM, WILMINGTON,DE 19808
Sorting Complete, June 08, 2018, 09:41:00 AM, WILMINGTON,DE 19808
Sorting/Processing Complete, June 08, 2018, 09:41:00 AM, WILMINGTON,DE 19808
Available For Pickup, June 08, 2018, 09:51:00 AM, WILMINGTON,DE 19808
Out For Delivery, June 08, 2018, 09:51:00 AM, WILMINGTON,DE 19808
Arrived At Unit, June 08, 2018, 10:12:00 AM, WILMINGTON,DE 19808
Arrival At Unit, June 08, 2018, 10:12:00 AM, WILMINGTON,DE 19808
Delivered, June 08, 2018, 11:32:00 AM, WILMINGTON,DE 19808



EXHIBIT A



**UNITED STATES POSTAL SERVICE.**

Date: June 8, 2018

MAIL MAIL:

The following is in response to your June 8, 2018 request for delivery information on your Certified Mail™/RRE item number 9214890106615400012421180. The delivery record shows that this item was delivered on June 8, 2018 at 11:32 am in WILMINGTON, DE 19808. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.

If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,
United States Postal Service

The customer reference information shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Reference ID: 9214890106615400012421180
010172.00075000
SECURITY NATIONAL INSURANCE COMPANY
c/o Corporation Service Company
251 Little Falls Dr
Wilmington, DE 19808-1674